UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:

MIVA, INC., Securities Litigation

Case No.  2:05-cv-201-FtM-29DNF

_____

### OPINION AND ORDER

_____This matter comes before the Court on Plaintiffs' Motion to Certify Class (Doc. #110) filed on June 4, 2007.  Defendants filed a Response (Doc. #122) on August 29, 2007.  With leave of court, plaintiffs filed a Reply (Doc. #134) on September 24, 2007 and defendants filed a Surreply (Doc. #136) on October 2, 2007.

### I.

"Questions concerning class certification are left to the sound discretion of the district court."  Cooper v. Southern Co., 390 F.3d 695, 711 (11th Cir. 2004).  "For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a), as well as at least one of the requirements set forth in Rule 23(b)."  Klay v. Humana, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004), cert. denied, 125 S. Ct. 877 (2005).  See also Amchem Prods. v. Windsor, 521 U.S. 591, 613-14 (1997). The four threshold requirements are (1) numerosity: the class is so numerous that joinder of all members is impractical; (2) commonality: questions of law or fact are common

to the class; (3) typicality: the representatives of the class present claims or defenses that are typical of the class; (4) adequacy: the representatives of the class will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a); Amchem Prods., 521 U.S. at 613; Turner v. Beneficial Corp., 242 F.3d 1023, 1025 (11th Cir. 2001) (en banc), cert. denied, 534 U.S. 820 (2001); Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1279 (11th Cir. 2000). In this case, plaintiffs seek class certification under Rule 23(b)(3), which requires plaintiffs to show predominance and superiority. When class certification is sought under this provision, the court is directed to take "a close look at the case before it is accepted as a class action." Amchem Prods., 521 U.S. at 615 (citing the Reporter for the 1966 amendments to Rule 23). "The initial burden of proof to establish the propriety of class certification rests with the advocate of the class." Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir. 2000), cert. denied, 532 U.S. 919 (2001).

## II.

Plaintiffs seek certification of this action as a class action on behalf of a class defined as "[a]ll persons who purchased the common stock of FindWhat.com, Inc. between September 3, 2003 and May 4, 2005, inclusive . . . and were damaged."[1] (Doc. #110, p.

---

[1]On June 6, 2005, FindWhat.com, Inc. changed its name to Miva, Inc. The Court will generally refer to the corporate defendant as
(continued...)

1.)  Plaintiffs argue that despite the Court's dismissal of all statements prior to February 23, 2005, the Court did not rule that "MIVA's reported financial performance and stock price were unaffected by Defendants' alleged omissions." (Doc. #134, p. 1.) Plaintiffs cite In re LTV Sec. Litig., 88 F.R.D. 134 (N.D. Tex. 1980) for the proposition that the "question is not when the first misstatement occurred, but whether previously reported financial results were infect by the accused conduct." (Doc. #134, p. 1.) Plaintiffs assert that the stock price was "infected" by defendants' conduct beginning on September 3, 2003 and thus the proper class period is from September 3, 2003 to May 4, 2005. (Doc. #134, p. 2.)  In the alternative, plaintiffs assert that the Court recognized that the defendants may have known of the fraudulent activity beginning in June 2004, and thus the class period should start no later than June 2004. (Doc. #134, p. 1.)

Defendants' Response asserts that the plaintiffs' definition of the class period is "wholly unrelated to the claims that remain in this case." (Doc. #122, p. 6.)  Defendants argue that the Court has already found that the earliest statement or omission on which the plaintiffs could base a claim is February 23, 2005.  Therefore the proper class period should be from February 23, 2005 to May 4, 2005. (Doc. #122, p. 8.)

---

[1](...continued)
Miva.

The Court finds that the appropriate class period runs from February 23, 2005 to May 24, 2005 (inclusive). The Court has already ruled that all statements prior to the February 23, 2005 conference call were not actionable and thus no basis for liability exists for any statements made prior to February 2005. Plaintiffs reliance on In re LTV Sec. Litg. is misplaced because the facts in that case are distinguishable from those in this case. In re LTV Sec. Litg. involved the restatement of earnings, and thus the court in that case found it appropriate to begin the class period from the date of the earliest restated earnings. See In re LTV Sec. Litg., 88 F.R.D. at 147. In this case, Miva did not restate its earnings, and plaintiffs do not provide any basis for the Court to commence the class period prior to the February 23, 2005 conference call. Therefore, the Court will examine whether class certification is appropriate under FED. R. CIV. P. 23 for the class period of February 23, 2005 to May 4, 2005 (inclusive).

### III.

The Conforming Amended Consolidated Class Action Complaint identifies the lead plaintiffs as: The David D. Berkley Trust (the Berkley Trust), Murtuza Tofafarosh, Y.P. Jain and Sampurna Jain (the Jains). (Doc. #108, ¶16.) Defendants oppose class certification because none of the lead plaintiffs satisfy the requirements of standing, commonality, typicality, adequacy of representation and predominance. (Doc. #122, pp. 3, 8, 11.)

**A.    Standing**

Defendants  assert  that  the  Berkley  Trust  and  Murtuza  Tofafarosh  do  not  have  standing  to  pursue  this  cause  of  action  because  their  purchaes  of  Miva  stock  all  took  place  prior  to  February 23, 2005.  Specifically, the Berkley Trust's last purchase  of Miva stock was February 10, 2005, and Tofafarosh's last purchase  of stock was August 23, 2004.  (Doc. #122, p. 8.)

"Any analysis of class certification must begin with the issue  of standing."  Murray v. U.S. Bank Trust Nat'l Ass'n, 365 F.3d  1284, 1289 (11th Cir. 2004)(internal  quotations  and  citations  omitted).  "To have standing to represent a class, a party must not  only satisfy the individual standing prerequisites, but must also  be part of the class and possess the same interest and suffer the  same injury as the class members."  Mills v. Foremost Ins. Co.,  511  F.3d 1300, 1307 (11th Cir. 2008).  Thus  in  order  to  establish  standing in this case, plaintiffs must show that (1) a misstatement  or omission (2) of material fact (3) made with scienter (4) on  which plaintiffs justifiably relied (5) proximately caused their  injury.  Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th  Cir. 2001); Theoharous v. Fong, 256 F.3d 1219, 1224 (11th Cir.  2001); Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir.  2005)(citation omitted).

In this case, the Court has already ruled that the first  alleged misstatement or omission of a material fact was made on

February 23, 2005.  (Doc. #91.)  Neither the Berkley Trust nor Trofafarosh purchased Miva stock on or after February 23, 2005 (Doc. # 22-2, pp. 9-12).  Thus the Court finds that the Berkley Trust and Trofafarosh lack standing to pursue any claims against defendants.  The Court notes that the Jains do have standing to pursue their claims because they purchased Miva stock after February 23, 2005 and thus the Court will limit its analysis to the Jains.  (See Doc. #22-2, p. 14.)

**B.  Rule 23(a) Requirements**

**(1)  Numerosity**

Rule 23(a)(1) requires that the class is so numerous that joinder of all members is impractical.  Practicability of joinder depends on many factors, including the size of the class, ease of identifying its numbers and determining their addresses, the facility of making service on them if joined, and their geographic dispersion.  Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986).  There is no specific number of class members necessary to evidence impracticability of joinder, and it is not necessary that the precise number of class members be known; the plaintiff, however, must show some evidence or reasonable estimate of the number of class members.  Id.  Plaintiffs estimate "thousands" of potential class members (Doc. #110, p. 8), and defendants do not contest plaintiffs' satisfaction of the numerosity requirement (Doc. #122, p. 11).  The Court agrees that the numerosity

requirement is satisfied in this case.  See, e.g., Cheney v. Cyberguard Corp., 213 F.R.D. 484, 490 (S.D. Fla. 2003).

   **(2)  Typicality and Commonality**[2]

   "Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large."  Wooden v. Bd. of Regents of the Univ. Sys. of Ga., 247 F.3d 1262, 1287 (11th Cir. 2001).  Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class.  Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984), cert. denied, 470 U.S. 1004 (1985). "A class representative must possess the same interest and suffer

---

[2]"The typicality and commonality requirements are distinct but interrelated, as the Supreme Court has made clear:

> The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Cooper, 390 F.3d at 713 (quoting Gen. Tel. Co. Of the Southwest v. Falcon, 457 U.S. at 157 n.13).  "The commonality and typicality requirements overlap.  Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification."  Cooper, 390 F.3d at 713 (quoting Prado-Steiman v. Bush, 221 F.3d 1266, 1278). "Traditionally, commonality refers to the group characteristics as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class."  Prado-Steiman, 221 F.3d at 1279.

the same injury as the class members in order to be typical under Rule 23(a)(3)." <u>Murray v. Auslander</u>, 244 F.3d 807, 811 (11th Cir. 2001)(citation omitted). Neither typicality or commonality require that all putative class members share identical claims, and both may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class at large. <u>Prado-Steiman</u>, 221 F.3d at 1279 n. 14. "The typicality requirement may be satisfied despite substantial factual differences, however, when there is a strong similarity of legal theories." <u>Auslander</u>, 244 F.3d at 811 (citation omitted). "Nevertheless, the named plaintiffs' claims must still share the same essential characteristics as the claims of the class at large." <u>Cooper</u>, 390 F.3d at 714 (citation and internal quotations omitted).

"[The] commonality requirement measures the extent to which all members of a putative class have similar claims." <u>Cooper</u>, 390 F.3d at 714. "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." <u>Auslander</u>, 244 F.3d at 811 (citation omitted).

Plaintiffs assert that they were victimized by the same common fraudulent scheme perpetrated by the defendants on the rest of the class and have suffered the same type of damages (monetary loss) due to the same unlawful conduct as all putative class members.

(Doc. #110, pp. 8-10.) The common scheme, plaintiffs assert, is characterized by common issues of law and fact including:

    1.  whether the federal securities laws were violated by Defendants' alleged acts;

    2.  whether the Company's annual and quarterly reports filed with the SEC contained material misstatements or omissions;

    3.  whether the Company's other publicly disseminated releases and statements during the Class Period omitted and/or misrepresented material facts and whether Defendants breached any duty to convey material facts or to 11correct material facts previously disseminated;

    4.  whether Defendants participated in and pursued the fraudulent scheme or course of business complained of;

    5.  whether Defendants acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts;

    6.  whether the market prices of FindWhat.com common stock during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations complained of; and

    7.  whether the members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

(Doc. #110, pp. 9-10.) Plaintiffs assert that "absent Class members necessarily would have to prove identical facts . . . if they pursued their claims individually." (Id. at p. 10.)

    Defendants respond that the "claims (and related defenses) of the proposed representatives are not typical of the putative class [because] . . . . [t]he proposed representatives will be subject to personal debilitating defenses regarding reliance, making their

situation atypical." (Doc. #122, p. 11.)  Specifically, defendants argue that the Jains abdicated all investment decisions to their son and thus did not rely on the integrity of the market for their decision to purchase Miva stock.  The lack of direct reliance on the market renders the Jains different from other class members. (Doc. #122, pp. 12, 18.)

Plaintiffs counter that the typicality analysis focuses on the defendants' conducts and not on that of the plaintiffs.  Moreover, investors are expected to rely on the advice of others, and thus the Jains' reliance on their son's recommendation does not defeat the typicality requirement, especially in light of the fact that their son is a hedge fund analyst.  (Doc. #134, p. 3.)  Plaintiffs assert that although the Jains relied on their son for their investment decisions, they were actively involved in the management of their portfolio.  (Doc. #134, p. 5.)

The Court agrees with defendants' assertion that the Jains relied on their son for all of the investment decisions.  Mrs. Jain testified that she knew her son was purchasing and selling Miva stock but did not know the reasoning behind the purchases or sales. (Doc. #122-3, pp. 5-6.)  However, that fact alone does not negate the Jains' ability to serve as class representatives.  The cases cited by defendants all had additional factors which prompted the courts to exclude specific individuals from serving as class representatives.  For example in In re Safeguard Scientifics, 216

F.R.D. 577, 583 (E.D. Pa. 2003) the court rejected one of the proposed class representatives not just because he relied on his broker but also because he had brought an arbitration proceeding against the broker for "improper and misleading financial advice." In Koenig v. Benson, 117 F.R.D. 330, 337 (E.D.N.Y. 1987), the court disqualified a potential class representative because he relied on his son for investment advice and could only speak Yiddish. Furthermore, in that case the son withheld public information about the stock in question from his father. See id. at 338. To accept defendants proposition that an individual who relies on the investment advice of a market professional can never serve as class representative would preclude many, if not most, investors from ever serving as lead plaintiffs. An investor's reliance on a professional's recommendation does not totally divorce the investor's decision to purchase from basic reliance on the integrity of the market price of the stock. The investment analyst may be presumed to have based his or her decisions and recommendations on factors not wholly divorced from the market. Finally, defendants citation to this Court's August 8, 2005 Opinion and Order in LaGrasta v. First Union Sec., Inc., No. 2:01-cv-251, 2005 WL 1875469 (M.D. Fla. Aug. 8, 2005) for the proposition that an individual cannot serve as class representative if he relied exclusively on the investment advice of another is misplaced. Defendants ignore the fact that the Court found one of the proposed

class representatives to be acceptable even though "[h]e relied upon the advice and recommendations of his brokers, and did no independent research before investing." <u>Lagrasta</u>, 2005 WL 1875469 at *8. Thus, the Court finds that the Jains satisfy the typicality and commonality requirement for class certification.

**(3)  Adequacy of Representation**

Rule 23(a)(4) requires that the named parties "will fairly and adequately protect the interests of the class." Rule 23(a)(4); <u>Valley Drug Co. v. Geneva Pharms., Inc.</u>, 350 F.3d 1181, 1189 (11th Cir. 2003). The purpose of the adequacy requirement is to protect the legal rights of the unnamed class members, <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 718, 726 (11th Cir. 1987), and applies to both the named plaintiffs and counsel. <u>London v. Wal-Mart Stores, Inc.</u>, 340 F.3d 1246, 1253 (11th Cir. 2003). "This 'adequacy of representation' analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." <u>Valley Drug Co.</u>, 350 F.3d at 1189 (citation omitted). Because all potential members of a class will be bound by the effect of a judgment, the Court must inquire into whether plaintiffs' counsel is qualified to carry out the litigation, whether plaintiffs have interests antagonistic to the rest of the class, and whether the plaintiffs possess the "personal characteristics and integrity necessary to fulfill the

fiduciary role of class representative." <u>Kirkpatrick</u>, 827 F.2d at 726.  While minor conflicts will not defeat class certification, certification will be denied where the economic interests and objectives of the named representatives (or their attorneys) differ significantly from the economic interests and objectives of the unnamed class members.  <u>Valley Drug Co.</u>, 350 F.3d at 1189-90.  At least one circuit has held that the PSLRA has raised the standard for adequacy of representation.  <u>Berger v. Compaq Computer Corp.</u>, 257 F.3d 475, 483 (5th Cir. 2001).

Defendants do not question the qualifications, experience or ability of plaintiffs' counsel.  The Court agrees, and finds plaintiffs' counsel properly qualified, well-experienced, and able to serve as class counsel.  Additionally, the Court finds no conflict of interest between the Jains and their counsel and the putative class members.

Defendants assert that the Jains cannot adequately represent the class because they abdicated all investment decisions to their son, and have relinquished all responsibility over the instant action to their attorneys.  (Doc. # 122, p. 2.)  Defendants argue that this Court has previously found that plaintiffs with similar characteristics as the Jains cannot adequately represent a proposed class.  (Doc. #122, p. 11.)  Specifically, defendants assert that in <u>LaGrasta</u> this Court rejected the appointment of a proposed class representative because the individual "(i) only purchased shares

after being told to so by another; (ii) only joined the class at the direction of another; (iii) did not have a command of the facts or the claims in the case; (iv) did not know what the defendants had done wrong; (v) did not know who else was involved in the lawsuit; and (vi) had virtually abdicated to his attorneys the conduct of the case." (Doc. #122, pp. 11-12.) Defendants contend that the Jains have all the same traits as those previously rejected by this Court and cannot meet the adequacy requirement of Rule 23(a).

The Court disagrees with defendants. The Jains' deposition testimony demonstrates that they have a basic understanding of the facts of the case. Specifically, Mrs. Jain explained what the allegations were and the involvement of the individual defendants in the scheme. (See generally Doc. #134-2, pp. 47-52.) Mrs. Jain also testified that she understood her responsibilities. She stated that she will do "[w]hatever is needed. It is a significant damage we went through." (Doc. #134-2, p. 54.)

Plaintiffs deny that the Jains have abdicated their responsibilities in this case to their attorneys, as evidenced by their awareness of the other plaintiffs and their continued involvement in discovery. (Doc. #134, p. 5.) The Court agrees. The Eleventh Circuit has stated that in "securities cases . . . where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a

perceived lack subjective interest on the part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." <u>Kirkpatick</u>, 827 F.2d at 728.   The Jains have shown a willingness to participate in this action by reviewing the original Complaint (Doc. #134-3, p. 7), appearing at depositions (Docs. ## 122-3, 134-2, 134-3), and complying with discovery requests (Doc. #134-3, p. 9).   The Court also notes that Ms. Jain testified that she provides the attorneys with input when she deems it necessary. (Doc. #134-3, p. 17.)   Therefore, the Court finds that the Jains have shown sufficient interest and involvement in the litigation and thus can adequately represent the class.

## C.  **Rule 23(b)(3) Requirements**

Rule 23(b)(3) requires a showing "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."   <u>Amchem Prods.</u>, 521 U.S. at 623.   This is "far more demanding" than the commonality requirement, <u>Amchem Prods.</u>, 521 U.S. at 623-24, and requires that "the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate

over those issues that are subject only to individualized proof. Common issues will not predominate over individual questions if, as a practical matter, the resolution of . . . [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." Cooper, 390 F.3d at 722 (internal quotations and citation omitted). "In determining whether class or individual issues predominate in a putative class action suit, we must take into account the claims, defenses, relevant facts, and applicable substantive law, to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant. . . " Klay, 382 F.3d at 1254, n.7 (internal quotations and citation omitted). The same Supreme Court case which stated that showing predominance is "far more demanding" than showing commonality stated that predominance is a test "readily met" in the securities fraud context. Amchem Prods., 521 U.S. at 625.

Rule 23(b)(3) also requires that "a class action is superior to other available methods for the fair and efficient adjudication of the [claims]." This focuses not on the convenience or burden of a class action, "but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." Klay, 382 F.3d at 1269.

**(1) Predominance**

Defendants argue that the elements of reliance and damages must be proved on a person-to-person basis, and therefore

individual issues predominate and class certification is not
appropriate. (Doc. #122, p. 20.) Plaintiffs counter that in the
securities fraud context reliance may be presumed under the fraud
on the market theory, and that the necessity of individual damage
calculations is not fatal to the issue of predominance. (Docs. ##
110, p. 14; 134, p. 7.)

    **(a) Fraud on the Market**

    Plaintiffs assert that defendants' actions amount to fraud-on-
the-market, and thus reliance may be presumed. (Doc. #110, p. 14.)
Defendants respond that the fraud on the market theory for proving
class-wide reliance does not apply to this case and thus each
individual defendant will have to prove that they relied on the
individual statements. (Doc. #136, p. 7.)

    As a preliminary matter, the Court notes that "[u]nder well-
established Eleventh Circuit precedent, the simple fact that
reliance is an element in a cause of action is not an absolute bar
to class certification." Klay, 382 F.3d at 1258. The specific
issue, therefore, is whether the reliance requirement precludes
class certification in *this* case.

    The fraud on the market theory is a method of establishing the
reliance element in a securities fraud case, and is an extension of
the rationale of Affiliated Ute Citizens of Utah v. United States,
406 U.S. 128 (1972). It was first adopted by the Eleventh Circuit

in the case of  Lipton v. Documation, Inc., 734 F.2d 740, 742-48
(11th Cir. 1984).  The Eleventh Circuit stated:

> [t]he fraud on the market theory finds its greatest
> justification when applied to class actions alleging
> fraudulent misrepresentations or omissions that affected
> security prices on a developed open market.  In such a
> context, it is reasonable to assume that misinformation
> disseminated into the marketplace will affect the market
> price.  It is also reasonable to allow a plaintiff to
> allege that he relied on the integrity of the market
> prices in purchasing the securities and then shift the
> burden to the defendant to disprove actual reliance.

Id. at 745-46.  The Court further stated that the fraud on the
market theory did not eliminate the need for plaintiff to establish
reliance.  Rather, "it simply recognizes that reliance may be
presumed where securities are traded on the open market, subject to
the defendant proving that the misrepresentations were not material
or that the plaintiff's decision to purchase was or would have been
unaffected if he had known the true facts."  Id. at 747-48.  "The
fraud on the market theory is based on the hypothesis that, in an
open and developed securities market, the price of a company's
stock is determined by the available material information regarding
the company and its business . . . .  Misleading statements will
therefore defraud purchasers of stock even if the purchasers do not
directly rely on the statements."  Sikes v. Teleline, Inc., 281
F.3d 1350, 1363 (quoting Basic Inc. v. Levinson, 485 U.S. 224, 241-
42 (1988)).

Miva is traded on the NASDAQ (Doc. #108, ¶159(a)), and thus
the stock was traded on a well-established open market.  Defendants

assert that while fraud-on-the-market is a recognized legal theory, plaintiffs have neither alleged nor proven facts sufficient to establish a "true" fraud-on-the-market case.  Defendants contend that the record evidence establishes that the market price of Miva stock behaved in exactly the opposite way that the fraud-on-the-market doctrine requires as to the February 23, 2005 statement and was not materially impacted by the March 16, 2005 filing of the Form 10-K.  Specifically, on February 23, 2005, the price of Miva stock dropped instead of rise even though plaintiffs allege that Miva's announcement "misled the market into believing that the quality of traffic was better than it actually was. . . ."  (Doc. #122, p. 22.)  Furthermore, Miva's stock price only rose by $0.11 from the previous day's closing price after the filing of the Form 10-K on March 16, 2005.  (Id. at p. 23.)  Defendants assert that this "lack of reaction indicates either that the market for the stock was not efficient, or there was no artificial inflation in the stock price as a result of the alleged misrepresentations set forth in the Complaint."  (Doc. #122, p. 24.)

The record evidence does not compel quite such a simple characterization.  On February 24, 2005, Miva announced that its' first quarter profits will miss Wall Street estimates.  (Doc. #134-3, p. 27.)  In an efficient market, such an announcement is expected to negatively impact share prices, which can explain why the February 23, 2005 announcement did not have the expected

positive impact on Miva's share price.   As for the Form 10-K's
failure to materially impact Miva's share price, the Court finds
that a reasonable person could interpret the one percent increase
in price as simply meaning that the Form 10-K only confirmed market
expectations with regard to the direction of Miva's financial
future.   Thus, the Court finds that reasonable minds could differ
in how to interpret the data presented, and plaintiffs' fraud-on-
the-market theory may not be discounted by the court at this stage
of the proceedings.   As noted previously, the court may not reject
class certification based only on its assessment of plaintiffs'
likelihood of success on the merits.   See Kirkpatrick, 827 F.2d at
723.   Thus the Court finds that this is not a case in which
individualized issues of reliance predominate over common
questions.

### (b)   Damage calculation

Defendants also assert that plaintiffs have failed to show
that the issue of damages can be shown on a class-wide basis.
Defendants argue that plaintiffs have "refused to respond to
discovery requests seeking information on how they [plaintiffs]
intend to avoid individualized damages issues." (Doc. #122, p.
25.)   This failure, defendants argue, requires the Court to
conclude that individual issues will predominate making class
certification inappropriate. (Id.)

Plaintiffs' Reply counters that the Eleventh Circuit has found that "the possibility of calculating individual damages does not necessarily mean that individual issues predominate." (Doc. #134, p. 7.) Furthermore, plaintiffs assert that in securities fraud class action cases, damages are calculated with the help of expert witnesses. (Id.)

The Eleventh Circuit has stated that "it is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification." Klay, 382 F.3d at 1260. The damage calculations in this case may require some individualized determinations. However, it appears that virtually every other issue other than damages is a common one. Thus, the Court finds that individual issues of damages do not predominate.

**(2) Superiority**

In a single short paragraph, defendants assert that class litigation is not superior to individual court cases or arbitration proceedings. (Doc. #127, p. 20.) However,

> In many respects, the predominance analysis . . .has a tremendous impact on the superiority analysis . . .for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims. Rule 23(b)(3) contains a "non exhaustive" list of four factors courts should take into account in making this determination:
>     (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation
> concerning the controversy already commenced by or
> against members of the class;
> (C) the desirability or undesirability of
> concentrating the litigation of the claims in the
> particular forum; [and]
> (D) the difficulties likely to be encountered in the
> management of a class action.

<u>Klay</u>, 382 F.3d at 1269 (internal quotations and citations omitted). The plaintiffs have addressed the four factors identified in Rule 23(b)(3) and assert: (1) that the expenses associated with an individual action would likely far outweigh any potential individual recovery and thus it is not in the interest of any one class member to pursue an action individually; (2) the burden on the courts would be significant if this action was pursued in multiple forums; (3) this forum is the superior one in which to concentrate the claims because Miva's principal place of business is located here and much of the questionable conduct occurred in this district and much of the evidence and witnesses are also located within the district. (Doc. #110, p. 15.) Plaintiffs also assert that there will most likely be no difficulties in managing this suit. (<u>Id.</u>)

After thorough review of the record, the Court finds nothing to contradict plaintiffs' assertions or any reason not to find a class action superior in this case.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Plaintiffs' Motion to Certify Class (Doc. #110) is **GRANTED** as follows:

A.   The Court certifies a class consisting of all persons who purchased the common stock of FindWhat.com between February 23, 2005 and May 4, 2005;

B.   Y.P. Jain and Sampura Jain are named class representatives for this class; and

C.   Plaintiffs' current attorneys, Maya Saxena and Ariel Acevedo of Saxena White P.A., are named the class counsel.

**DONE AND ORDERED** at Fort Myers, Florida, this ___12th___ day of March, 2008.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record