# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

|  |  |  |
|---|---|---|
| IN RE MIVA, INC. | ) | CIVIL ACTION FILE |
| SECURITIES LITIGATION | ) | NO. 2:05-cv-00201-FtM-29DNF |
|  | ) |  |
|  | ) |  |

## DEFENDANTS' DISPOSITIVE MOTION
## FOR SUMMARY JUDGMENT

Defendants hereby move for summary judgment pursuant to Fed. R. Civ. P. 56. The record in this case establishes that there is no genuine issue as to any material fact relating to the elements of damages and loss causation of Plaintiffs' asserted claims under Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 promulgated thereunder, and Section 20(a) of the Securities Exchange Act. Defendants, therefore, are entitled to judgment as a matter of law.

In support thereof, Defendants rely on the Statement of Undisputed Material Facts and the Memorandum of Law, both of which are filed contemporaneously herewith, and all other relevant matters of record.

Respectfully submitted, this 2nd day of March, 2009.

s/ Joseph G. Foster
Joseph G. Foster
Florida Bar No. 0301980

PORTER WRIGHT MORRIS &
 ARTHUR LLP
5801 Pelican Bay Blvd.
Suite 300
Naples, FL 34108-2709
Tel: (239) 593-2900
Fax: (239) 593-2990

-and-

Todd R. David
Georgia Bar No. 206526
Susan E. Hurd
Georgia Bar No. 379628

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Tel:  (404) 881-7000
Fax:  (404) 881-7777

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

---

| | | |
|---|---|---|
| **IN RE MIVA, INC.** | ) | **CIVIL ACTION FILE** |
| **SECURITIES LITIGATION** | ) | **NO. 2:05-cv-00201-FtM-29DNF** |

---

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **DEFENDANTS'**

**DISPOSITIVE MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using

the CM/ECF system, which will send a notice of electronic filing to all registered users.

This 2nd day of March, 2009.


s/ Joseph G. Foster_____
Joseph G. Foster
Florida Bar No. 0301980

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | | |
|---|---|---|
| IN RE MIVA, INC. | ) | CIVIL ACTION FILE |
| SECURITIES LITIGATION | ) | NO. 2:05-cv-00201-FtM-29DNF |
| | ) | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

Todd R. David
Georgia Bar No. 206526
Susan E. Hurd
Georgia Bar No. 379628

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Fax: (404) 881-7777

Joseph G. Foster
Florida Bar No. 0301980

PORTER WRIGHT MORRIS
& ARTHUR LLP
5801 Pelican Bay Blvd.
Suite 300
Naples, FL 34108-2709
Telephone: (239) 593-2900
Fax: (239) 593-2990

*Counsel for Defendants*

# TABLE OF CONTENTS

I.      REQUEST FOR ORAL ARGUMENT ................................................................1

II.     INTRODUCTION ................................................................................................1

III.    BACKGROUND AND PROCEDURAL POSTURE ...........................................2

IV.     ARGUMENT AND ANALYSIS ..........................................................................4

      A.      Summary Judgment Standard ..................................................................4

      B.      The Testimony Of Plaintiffs' Own Expert Precludes The
           Existence Of A Genuine Issue Of Material Fact As To Loss
           Causation And Damages ...........................................................................7

      C.      The Exclusion Of Hakala's Opinions Renders Plaintiffs Unable
           To Meet Their Burden To Prove Loss Causation And Damages .............13

V.      CONCLUSION ...................................................................................................15

## I.    REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), Defendants hereby request oral argument of one hour on their Dispositive Motion for Summary Judgment.

## II.    INTRODUCTION

Summary judgment is appropriate because Plaintiffs cannot show as a matter of law the required elements of loss causation and damages in this securities fraud class action. Attempting to create a triable issue as to loss causation and damages, Plaintiffs have tendered the opinion of Scott D. Hakala ("Hakala"). As demonstrated in Defendants' Motion to Exclude the Expert Opinions of Scott D. Hakala, Hakala's opinions are inadmissible. This Motion will demonstrate that, even if one assumes Hakala's opinions are admissible, Defendants would be entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

As shown below, Hakala's opinions not only fail to support the claims that remain in the case, but they also actually preclude the claims asserted. Hakala testified that the inflation he believes was reflected in MIVA's stock price existed prior to the start of the class period. Hakala was forced to concede at his recent deposition that the inflation he believes existed **"predates the class period, even if it's not actionable according to the Court."** (Deposition of Scott D. Hakala, taken on February 18, 2009 ("Hakala Dep.") at 19:17-18, attached as Exhibit A ("Ex. A") to Defendants' Statement of Undisputed Material Facts ("SUMF"), filed contemporaneously herewith.)[1] The problem for Plaintiffs is that the Court has in fact twice held that such claims are not actionable. (*See In re MIVA, Inc. Sec. Litig.*,

---

[1]    Exhibits referenced herein are attached to Defendants' SUMF.

No. 2:05-cv-201-FtM-29DNF, slip op. at 4 (M.D. Fla. Mar. 12, 2008); *see also infra* at p.

12.)  In other words, the only damage claims Plaintiffs advance have already been rejected by

this Court's prior Orders.

Defendants' present Motion is based solely on the issues of loss causation and

damages, which, as set forth below, are dispositive of the entire case and not dependent on

the conclusion of fact discovery.  The Court has discretion to entertain more than one motion

for summary judgment in a given case.  *See, e.g.*, *Fernandez v. Bankers Nat'l Life Ins. Co.*,

906 F.2d 559, 569 (11th Cir. 1990); *see also Allstate Fin. Corp. v. Zimmerman*, 296 F.2d

797, 799 (5th Cir. 1961); *Compania de Elaborados de Café v. Cardinal Cap. Mgmt., Inc.*,

401 F. Supp. 2d 1270, 1285-86 (S.D. Fla. 2003).  In the interest of efficiency and

conservation of judicial resources, Defendants request that the Court exercise its discretion to

consider the instant Motion now without prejudice to their filing an additional and/or

renewed motion for summary judgment on other issues later in the case.  If, however, the

Court is not inclined to consider potentially more than one motion for summary judgment,

Defendants request that the Court defer its consideration of this Motion and permit

Defendants to reserve their right to file an additional and/or renewed motion for summary

judgment later in the case, consistent with the time period allotted under the Court's

Amended Case Management Scheduling Order.

## III.    BACKGROUND AND PROCEDURAL POSTURE

On May 6, 2005, Plaintiffs filed the first of a series of complaints that would later be

consolidated into the present action against Defendants.  Plaintiffs filed their First Amended

Consolidated Class Action Complaint on January 17, 2006.[2]  In that complaint, Plaintiffs

recited eleven of MIVA's public statements made between September 3, 2003 and March 16,

2005 that were alleged to be false or misleading.  Defendants moved to dismiss the complaint

on February 9, 2006.  By Order dated March 15, 2007, the Court granted Defendants' motion

in part, dismissing the first nine public statements identified in the complaint on grounds that

the statements were not false or misleading when made.

The Court, however, allowed the last two statements – and only the last two

statements – to remain in the case.  The first of these statements was contained in a February

23, 2005 conference call that MIVA held with investment analysts, and the second statement

consisted of four disclosures made in MIVA's Form 10-K for the year ending December 31,

2004, filed with the SEC on March 16, 2005.  Plaintiffs then filed a Conforming Amended

Consolidated Class Action Complaint[3] on May 3, 2007, in response to the Court's Order.

By Order dated March 12, 2008, the Court certified a class consisting of all persons

who purchased the Company's common stock between February 23, 2005 and May 4, 2005.

Plaintiffs explicitly argued in their motion for class certification that there should be an

earlier class period start date based on the theory that statements made prior to February 23,

2005 could have had an inflationary effect on the stock price during the class period.  *See*

Pls.' Reply to Defs.' Opp. To Pls.' Mot. for Class Cert., Docket No. 134, at 1-2 (Sept. 24,

2007).  But, the Court expressly rejected that argument and reminded Plaintiffs that the Court

---

[2]    Although titled "Plaintiffs' First Amended Complaint," this filing was actually the third iteration of the lawsuit.  An earlier amended version of the complaint was filed on August 16, 2005 and was summarily dismissed by the Court on December 28, 2005 for failure to meet the pleading requirements of the Private Securities Litigation Reform Act.  *See In re MIVA, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, slip op. at 6 (M.D. Fla. Dec. 28, 2005).
[3]    Citations herein will be to the Conforming Amended Consolidated Class Action Complaint (Docket Number 108).

"ha[d] already ruled that all statements prior to the February 23, 2005 conference call were not actionable and thus no basis for liability exists for any statements made prior to February 2005." *See In re MIVA, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, slip op. at 4 (M.D. Fla. Mar. 12, 2008). Accordingly, the Court rejected Plaintiffs' request to commence the class period prior to February 23, 2005, the date of the first remaining actionable misstatement. We bring this Motion in large part because Plaintiffs' only theories of damages and loss causation are based on those that the Court has repeatedly rejected.

Plaintiffs' disregard for the Court's prior rulings became clear when, on November 3, 2008, Plaintiffs submitted the Expert Report of Scott D. Hakala ("Hakala Report") on loss causation and damages, attached as Exhibit B ("Ex. B") to Defendants' SUMF. On December 10, 2008, Defendants disclosed the Expert Report of Laura E. Simmons ("Simmons Report"). Both experts have also provided deposition testimony. Defendants have filed, contemporaneous with their Dispositive Motion for Summary Judgment, a Motion to Exclude the Expert Opinions of Hakala under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Khumo Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

## IV.    ARGUMENT AND ANALYSIS

### A.    <u>Summary Judgment Standard.</u>

Summary judgment is appropriate when the record evidence shows that there is no genuine issue of material fact as to an essential element of the plaintiff's claim. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Although the moving party bears the initial burden of proof to show the absence of any genuine issue of material fact, once satisfied, the nonmoving party then bears the burden of proving that a genuine issue

remains.  *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992).  The nonmoving party must provide more than a scintilla of evidence to satisfy the burden; there must be a showing of evidence sufficient for a jury to find in favor of the nonmoving party. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 1999).  Summary judgment is proper when the nonmoving party fails to adduce such sufficient evidence to create a legitimate issue for trial as to any one (or more) of the essential elements of the claims presented.  *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001).

To prevail on a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must prove, among other elements, economic loss and loss causation.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 768 (2008).  Thus, Plaintiffs bear the burden of proving that each alleged misrepresentation or omission caused the loss for which they seek to recover damages.  15 U.S.C. § 78u-4(b)(4); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).  Courts routinely dismiss Section 10(b) claims where plaintiffs fail to satisfy their burden of establishing loss causation and damages.  *See, e.g.*, *Gordon Partners v. Blumenthal*, 293 F. App'x 815, 817-18 (2d Cir. 2008); *Ray v. Citigroup Global Mkts., Inc.*, 482 F.3d 991, 994-97 (7th Cir. 2007); *In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1295 (N.D. Okla. 2007), *aff'd*, 07-5119, 2009 WL 388048, at *11 (10th Cir. Feb. 18, 2009); *see also In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2007); *In re Coca-Cola Enters., Inc. Sec. Litig.*, 510 F. Supp. 2d 1187, 1205 (N.D. Ga. 2007); *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, 2005 WL 1138833, *7-*9 (W.D. Mo. Mar. 23, 2005); *In re Compuware Sec. Litig.*, 386 F. Supp. 2d  913, 920 (E.D. Mich.

2005); *Barr v. Matria Healthcare, Inc.*, 324 F. Supp. 2d 1369, 1380 (N.D. Ga. 2004); *In re Zonagen, Inc. Sec. Litig.*, 322 F. Supp. 2d 764, 783 (S.D. Tex. 2003).

For example, in *In re Williams Securities Litigation*, the court concluded that the plaintiffs' expert testimony was inadmissible and granted summary judgment on the plaintiffs' Section 10(b) and Rule 10b-5 claims, holding that the plaintiffs could not, as a matter of law, establish loss causation or damages, two critical elements of these claims. 496 F. Supp. 2d at 1275, 1295. The court ruled that, without expert testimony, the plaintiffs could not satisfy their burden to show (1) that the plaintiffs' claimed losses were caused by the defendants' alleged misrepresentations, or (2) the fact of damages or the means of calculating them. *Id.* at 1295. The Tenth Circuit recently affirmed both the exclusion of the plaintiffs' expert testimony and the summary judgment decision, holding that, because of the plaintiffs' lack of evidence on loss causation, "there is 'simply no way for a juror to determine whether the alleged fraud caused any portion of Plaintiffs' loss.'" *Williams*, 2009 WL 388048, at *11 (quoting *Omnicom*, 541 F. Supp. 2d at 554.) Similarly, in *Omnicom*, the court granted the defendants' motion for summary judgment, holding that the plaintiffs' proffered evidence of loss causation – the expert opinion of Hakala – was insufficient to establish this crucial element of their claim. 541 F. Supp. 2d at 554.

Likewise here, as discussed in detail below, no genuine issue of material fact remains as to either loss causation or damages, and Defendants' Dispositive Motion for Summary Judgment should be granted.

**B.    The Testimony Of Plaintiffs' Own Expert Precludes The Existence Of A Genuine Issue Of Material Fact As To Loss Causation And Damages.**

The testimony Plaintiffs have tendered as to loss causation and damages fails to create any triable issue because it does not support a claim under the only statements the Court has allowed to remain in the case.  Once again, under the Court's unequivocal prior rulings, only statements made by Defendants on February 23, 2005, and March 16, 2005, can possibly form the basis for damages claims.  **INDEED, THE TESTIMONY OF HAKALA – PROPERLY UNDERSTOOD – MEANS THERE WERE NO LOSSES CAUSED OR DAMAGES FLOWING FROM STATEMENTS MADE ON THOSE TWO DAYS.**

The necessary loss causation inquiry examines whether a plaintiff can show a causal connection between the alleged misrepresentation and the loss.  *Dura*, 544 U.S. at 342.  To meet that burden, "a plaintiff must show that the [alleged] untruth was in some reasonably direct, or proximate, way responsible for his loss."  *Robbins v. Kroger Props.*, 116 F.3d 1441, 1447 (11th Cir. 1997) (quotations omitted).  Further, "a plaintiff will be allowed to recover only damages actually caused by the misrepresentation."  *Id.* at 1447 n.5.  Plaintiffs, therefore, must prove that there was a direct causal connection between each of the alleged misrepresentations described in the Complaint and the subsequent decline in MIVA's stock price.  *Dura*, 544 U.S. at 345-46.  Under *Dura*, Plaintiffs must show not only that MIVA's stock price was inflated by each of the alleged misrepresentations, which alone is insufficient, but also that the share price fell significantly after the truth became known. *Williams*, 496 F. Supp. 2d at 1264 (citing *Dura*, 544 U.S. at 347-48).  Plaintiffs, however, cannot even satisfy *Dura*'s threshold requirement of establishing that MIVA's stock was

inflated in any respect as a result of the only two actionable misstatements that remain in the case.

Attempting to satisfy their burden of proving loss causation and damages, Plaintiffs proffer Hakala's opinions and testimony. His opinions and testimony, however, dramatically undercut Plaintiffs' theory of the case. This is true for the following reasons:

(1)     Hakala testifies that he understood the Court's prior rulings and that the only two potentially actionable claims that remained in the case concern the February 23, 2005 and March 16, 2005 statements:

> Q:          Do you have an understanding of what the Court's rulings have been regarding which issues or which alleged statements or public disclosures are or are not in the case?
>
> Hakala:    I have a general understanding based on reading the Court's order.
>
> Q:          So do you understand, for example, the Court has dismissed allegations except for those that concern a February 23, 2005 conference call and a March 16th, 2005 10-K?
>
> Hakala:    I believe that's correct. I don't know if there's a press release or some other representation on February 23rd, but I know that there are specific statements made during a conference call and then there's a filing of the 10-K where there's specific statements that are – I know for sure are in the case.

(Hakala Dep. at 14:20-15:11, Ex. A.) Hakala also acknowledges his awareness that, as a result of the above ruling, the Court limited the class period to February 23, 2005 through May 4, 2005. (*See id.* at 21:3-6.)

(2)     In direct conflict with the only theory the Court allowed to proceed, Hakala testified that the entire amount of the purported inflation already existed in the Company's stock price one full year prior to February 23, 2005, the first day of the certified class period.

**IF, AS HAKALA TESTIFIED, THE INFLATION EXISTED BEFORE THE FIRST DAY OF THE CLASS PERIOD, THEN THERE CAN BE NO LOSS CAUSED BY OR COGNIZABLE DAMAGES FLOWING FROM THE ONLY STATEMENTS THAT ARE AT ISSUE ON FEBRUARY 23, 2005 AND MARCH 16, 2005.**  Hakala's testimony made it clear that he believes the inflation in MIVA's stock price resulted from events that occurred prior to the class period certified by the Court.  Consider the following from Hakala's deposition testimony:

| | |
|---|---|
| Q: | Okay.  And what [Exhibit B-1 is] denoting, as I understood your prior testimony, is that as of February 24, 2004, 26.44 percent of the trading price was ascribed to inflation because of false statements. |
| Hakala: | Inflation because of false statements or because they're not actionable at this point, what would have happened had the truth been revealed as I understand it at that point in time. |
| Q: | Okay.  So -- |
| Hakala: | **SO WHAT WE'RE SAYING IS THAT THE INFLATION PREDATES THE CLASS PERIOD, EVEN IF IT'S NOT ACTIONABLE ACCORDING TO THE COURT.** |
| Q: | We've had some things packed down.  I understand what you're saying.  Let's unpack them so the testimony is clear for the Court. |
| Hakala: | Okay. |
| Q: | This is February 24th, 2004, and you understand that's a year before the class period as certified by the Court; correct? |
| Hakala: | Yes. |
| Q: | You understand that February 24[, 2004] is a year before any actionable misrepresentation that the Court has recognized as surviving a motion to dismiss, correct? |

> Hakala:        Correct.
>
> Q:             And what you were saying here is that the inflation was already
>                baked into the stock a year before [the class period start] date?
>
> Hakala:        Yes.

(Hakala Dep. at 19:5-20:9 (emphasis added), Ex. A.)

       (3)    The above testimony makes it abundantly clear that Hakala and Plaintiffs plainly seek damages for alleged statements that the Court has said were not actionable. Not only that, but the only stock price inflation about which Hakala testified existed in his view well before the start of the class period. Indeed, according to Hakala, 26.44% of MIVA's share price on February 23, 2005 was attributable to pre-class period inflationary statements and this alleged inflation remained constant until May 5, 2005. (*See id.* at 19:5-1, Ex. A; *see also* Hakala Report, Ex. B-1 at 1-10, Ex. B.) These opinions are demonstrated in Hakala's Exhibit B-1 attached to his report, which is reproduced below, where he lists the same "true value" percentage and, thus, the same amount of alleged inflation on February 24, 2004, one year before the start of the class period, as he does on the first day of the class period, February 23, 2005:

| | Regression Window | 1-Day Effect | T-statistic | Description | Relevant Events | True Value Percent |
|---|---|---|---|---|---|---|
| 55 | 02/24/2004 | 3.59% | 1.34 | FindWhat.com to buy Comet Systems for $33.5M (Dow Jones News Service) | 0 | 73.56% |
| 56 | 03/22/2004 | 0.08% | 0.03 | FindWhat.com announced the signing of a strategic alliance with New York City-based Thomas Global Register, LLC, a leading publisher of global business-to-business internet directories, and a division of Thomas Publishing Company LLC. Under the terms of the agreement, FindWhat.com and Thomas Global Register will establish a joint venture, ThomasB2B.com LLC, which will power a marketplace listings service | 0 | 73.56% |

| | | | | using FindWhat.com's private label service(Business Wire) | | |
|---|---|---|---|---|---|---|

<div align="center">* * *</div>

| 112 | 02/24/2005 | -18.32% | -7.68 | FindWhat.com said quarterly earnings were flat from a year ago, sending shares down. FindWhat posted 4Q net income of $4.8M or 15¢ a diluted share compared with $3.5M or 15¢ a diluted share a year earlier, despite several acquisitions and a near 40% increase in the number of shares outstanding since the year earlier period.  In November, the company forecast income of 14¢-17¢ a share.  Quarterly revenue rose to $58.7M compared to $21M, a year earlier. Adjusted EPS were 19¢ a share due to a non-cash goodwill impairment charge recorded in the 4Q on the company's acquisition of Miva Corp., FindWhat said. Operating expenses for the quarter rose to $51.6M from $15.6M, a year earlier, the company said.  Looking ahead, the company said it expects to earn 8¢-11¢ a share in the 1Q, and 53¢-69¢ a share in the full year 2005.  The company said it plans to increase internal investments in 2005 (Reuters News 02.23.05);   FindWhat.com Inc. shares were down after the company was slapped with a slew of brokerage downgrades following disappointing 1Q guidance.  The company sent Wall | 0 | 73.56% |
| 113 | 03/02/2005 | 0.67% | 0.25 | CBOE to list LEAPS on FindWhat.com (Dow Jones News Service 03.01.05) | 0 | 73.56% |

(Hakala Report, Ex. B-1 at 1, 8, Ex. B.)

(4)    Hakala's own opinions also show that no statements issued on February 23, 2005 or March 16, 2005 had a statistically significant, positive effect on MIVA's stock price. (Hakala Report, Ex. B-1 at 10, Ex. B; Hakala Dep. at 29:6-30:1; 34:9-12, Ex. A.)  In fact, his analysis demonstrates that, on February 24, 2005, the trading day immediately following the February 23, 2005 conference call, the market reacted negatively to the announcements made on that day, and MIVA's stock price dropped 18.59%.  *See* Hakala Report at ¶ 30, Ex. B; *see*

*also In re Metris Cos., Sec. Litig.*, 428 F. Supp. 2d 1004, 1014 (D. Minn. 2006) (stating that Hakala's theory of loss causation "strain[ed] the imagination" where the company's stock price dropped following the allegedly misleading statement).  In addition, Hakala's analysis confirms that there was also no statistically significant stock price reaction associated with the filing of the March 16 Form 10-K. (Hakala Dep. at 29:6-30:1, Ex. A.)  Hakala testified: "[I]t appears that the change in price [on March 16] was relatively small and probably would not qualify as statistically significant." (*Id.* at 34:9-12.)  Indeed, Hakala specifically omitted the March 16 date from his event study analysis. (*Id.* at 29:6-9.)  Thus, Hakala's opinions provide no support for Plaintiffs' claim that either of the two remaining alleged misstatements led to any inflation in MIVA's stock price.

(5)     Thus, under Hakala's own analysis, no statement on February 23 or March 16 – the only remaining potentially actionable dates – could possibly have contributed to any inflation in the stock price during the class period.  Rather, Hakala's opinion supports the theory that earlier purported inflationary statements, which the Court has twice held to be non-actionable, continued to affect the stock price during the class period – the very theory that the Court already rejected when it limited the class period.  *See In re MIVA, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, slip op. at 4 (M.D. Fla. Mar. 12, 2008); *see also* Pls.' Reply to Defs.' Opp. To Pls.' Mot. for Class Cert., Docket No. 134, at 1-2 (Sept. 24, 2007). Hakala's assumption that the class period statements had no effect on the trading price of MIVA shares precludes Plaintiffs' claims as to these statements.

Hakala's report and deposition testimony, when considered in light of the Court's prior Orders, preclude a showing of either loss causation or cognizable damages.  If, as

Plaintiffs' own expert claims, the stock price was already inflated prior to the start of the class period – and prior to the first alleged actionable misrepresentation – then Plaintiffs also cannot prove that the losses they allegedly experienced were proximately caused by a drop in stock price associated with either of the alleged misrepresentations. *See Dura*, 544 U.S. at 345-46. According to Hakala, the stock price was inflated prior to the start of the class period, and the level of inflation was not changed by the statements made on February 23 and March 16, 2005. (*See* Hakala Dep. at 19:5-1, Ex. A; *see also* Hakala Report, Ex. B-1 at 1-10, Ex. B.) Thus, Plaintiffs' only proffered evidence demonstrates that the alleged misrepresentations could not as a matter of law have caused Plaintiffs' losses. Defendants are, therefore, entitled to summary judgment because Plaintiffs cannot create an issue of fact for the jury with regard to the necessary elements of loss causation and damages.

**C.     The Exclusion Of Hakala's Opinions Renders Plaintiffs Unable To Meet Their Burden To Prove Loss Causation And Damages.**

Defendants also are entitled to summary judgment because there exists no admissible evidence on the elements of loss causation and damages. As discussed in detail in Defendants' Motion to Exclude the Expert Opinions of Hakala, Hakala's opinions are inadmissible under Federal Rule of Evidence 702, as well as *Daubert* and its progeny. The exclusion of this evidence must result in summary judgment in favor of Defendants. *See Williams*, 496 F. Supp. 2d at 1295, *aff'd,* 07-5119, 2009 WL 388048, at *11 (10th Cir. Feb. 18, 2009); *see also Omnicom*, 541 F. Supp. 2d at 554; *Zonagen*, 322 F. Supp. 2d at 781-83.

Because loss causation and economic loss are essential elements of Plaintiffs' claims and ones upon which they will have the burden of proof at trial, Plaintiffs are required to adduce evidence demonstrating these elements sufficient to support a finding in their favor.

*See Stoneridge*, 128 S. Ct. at 768; *see also Dura*, 544 U.S. at 345-46.  Plaintiffs have not produced (nor can they) competent expert testimony prior to the deadline imposed by the Court, and additional factual discovery will not establish loss causation or damages.  Indeed, both parties' experts have issued opinions and provided testimony on these issues without additional fact discovery beyond that in the public record.  *See Carpe*, 2005 WL 1138833, at *7-*9 (granting summary judgment in defendants' favor as to plaintiffs' Section 10(b) and Rule 10b-5 claims based upon a failure to establish damages and the means of calculating damages where court previously excluded plaintiffs' proffered expert opinion on damages).

Accordingly, the exclusion of Hakala's opinions leaves the record devoid of any basis upon which a trier of fact could reasonably conclude, consistent with *Dura*, that Plaintiffs' claimed losses were proximately caused by Defendants' alleged misrepresentations.  *See, e.g.*, *Williams*, 496 F. Supp. 2d at 1295; *see also Omnicom*, 541 F. Supp. 2d at 554; *Carpe*, 2005 WL 1138833, at *9.  Having failed to provide admissible evidence sufficient to raise a genuine issue of material fact with regard to the causal link between the February 23 and March 16 statements and Plaintiffs' alleged losses, Defendants are entitled to summary judgment on the elements of loss causation and damages.  *Id.*; *see also Gordon Partners*, 293 F. App'x at 817-18; *Ray*, 482 F.3d at 994-97; *Compuware*, 386 F. Supp. 2d  at 920; *Zonagen*, 322 F. Supp. 2d at 783.

## V.    CONCLUSION

For the reasons stated above, the Court should grant Defendants' Dispositive Motion for Summary Judgment.

Respectfully submitted, this 2nd day of March, 2009.

<div style="margin-left:40%">

s/ Joseph G. Foster
Joseph G. Foster
Florida Bar No. 0301980

PORTER WRIGHT MORRIS &
 ARTHUR LLP
5801 Pelican Bay Blvd.
Suite 300
Naples, FL  34108-2709
Tel:  (239) 593-2900
Fax:  (239) 593-2990

-and-

Todd R. David
Georgia Bar No. 206526
Susan E. Hurd
Georgia Bar No. 379628

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Tel:  (404) 881-7000
Fax:  (404) 881-7777

*Counsel for Defendants*

</div>

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

|  |  |
|---|---|
| IN RE MIVA, INC. | ) |
| SECURITIES LITIGATION | ) |

CIVIL ACTION FILE
NO. 2:05-cv-00201-FtM-29DNF

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

This 2nd day of March, 2009.

s/ Joseph G. Foster_____
Joseph G. Foster
Florida Bar No. 0301980