UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| IN RE MIVA, INC.<br>SECURITIES LITIGATION | CIVIL ACTION FILE<br>NO. 2:05-cv-00201-FtM-29DNF |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Section II.H.1 of the Court's Case Management and Scheduling Order of April 25, 2007, Defendants respectfully submit this Statement of Undisputed Material Facts in support of their Dispositive Motion for Summary Judgment.

1.   On May 6, 2005, Plaintiffs filed a purported class action under the federal securities laws in the United States District Court for the Middle District of Florida against Defendants FindWhat.com, Inc., Phillip Thune, Craig Pisaris-Henderson, and Brenda Agius (collectively, the "Original Defendants"). (Docket No. 1, Class Action Complaint (filed May 6, 2005).)

2.   On July 27, 2005, Plaintiffs' lawsuit was consolidated with several other lawsuits asserting similar claims against the same Original Defendants. (*In re MIVA, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, slip op. at 3 (M.D. Fla. July 27, 2005).)

3.   On August 16, 2005, Plaintiffs filed an amended Consolidated Class Action Complaint. (Docket No. 34, Plaintiffs' Consolidated Class Action Complaint (filed Aug. 16, 2005).)

4.   The Court dismissed Plaintiffs' amended Consolidated Class Action Complaint on December 28, 2005 for failure to meet the pleading requirements of the Private Securities

Litigation Reform Act.  (*In re MIVA, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, slip op. at 6 (M.D. Fla. Dec. 28, 2005).)

5.     Plaintiffs filed their First Amended Consolidated Class Action Complaint (the "Amended Complaint") on January 17, 2006.  In the Amended Complaint, Plaintiffs recited eleven of MIVA's public statements made between September 3, 2003 and March 16, 2005 that were alleged to be false or misleading.  (Docket No. 50, Plaintiffs' First Amended Consolidated Class Action Complaint ¶¶ 64-96 (filed Jan. 17, 2006).)

6.     On February 9, 2006, Defendants filed a Motion to Dismiss the Amended Complaint.  (Docket No. 55, Defendants' Renewed Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint (filed Feb. 9, 2006).)

7.     On March 15, 2007, the Court granted Defendants' Motion to Dismiss in part, dismissing the first nine public statements identified in the Amended Complaint on grounds that the statements were not false or misleading when made.  The Court allowed the last two statements to remain in the case.  The first of these statements pertained to a February 23, 2005 conference call that MIVA held with investment analysts, and the second statement consisted of four disclosures made in MIVA's Form 10-K for the year ending December 31, 2004, filed with the SEC on March 16, 2005.  (*In re MIVA, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, slip op. at 11-32 (M.D. Fla. Mar. 15, 2007).)

8.     On May 3, 2007, Plaintiffs filed a Conforming Amended Consolidated Class Action Complaint (the "Conforming Amended Complaint").  (Docket No. 108, Plaintiffs' Conforming Amended Consolidated Class Action Complaint (filed May 3, 2007).)

9. On June 4, 2007, Plaintiffs filed a Motion for Class Certification. Plaintiffs requested a class period beginning on September 3, 2003 and ending on May 4, 2005. (Docket No. 110, Plaintiffs' Motion for Class Certification, at 1 (filed June 4, 2007).)

10. Defendants filed a Response in Opposition to Plaintiffs' Motion for Class Certification on August 29, 2007. Defendants argued that Plaintiffs' proposed class period "was inconsistent with the Court's [prior] Order[s]" because the proposed class period did not "correspond directly to the remaining claims." Defendants argued that, "[u]nder the prior Orders of this Court, the earliest date on which any proposed class could begin would be February 23, 2005." (Docket No. 122, Defendants' Response in Opposition to Plaintiffs' Motion for Class Certification, at 1, 4-6, 24-25 (filed Aug. 29, 2007).)

11. On September 24, 2007, Plaintiffs filed a Reply in support of their Motion for Class Certification, in which they claimed that their proposed class period, beginning on September 3, 2003, was appropriate because "Plaintiffs' allegations raise a 'substantial question' that MIVA's earnings and stock price were 'infected' by Defendants' conduct beginning on September 3, 2003, through May 4, 2005." (Docket No. 134, Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Class Certification, at 1-2 (filed Sept. 24, 2007).)

12. On March 12, 2008, the Court certified a class consisting of all persons who purchased the common stock of the Company between February 23, 2005 and May 4, 2005. In its Order, the Court stated that it "ha[d] already ruled that all statements prior to the February 23, 2005 conference call were not actionable and thus no basis for liability exists for any statements made prior to February 2005." The Court observed that "[P]laintiffs do

not provide any basis for the Court to commence the class period prior to the February 23, 2005 conference call." (*In re MIVA, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, slip op. at 4 (M.D. Fla. Mar. 12, 2008).)

13. On February 18, 2009, Plaintiffs' purported expert on loss causation and damages, Scott D. Hakala ("Hakala"), provided deposition testimony, relevant portions of which are attached hereto as Exhibit A ("Ex. A"). In his deposition, Hakala testified, *inter alia*, as follows:

> Q: Do you have an understanding of what the Court's rulings have been regarding which issues or which alleged statements or public disclosures are or are not in the case?
>
> Hakala: I have a general understanding based on reading the Court's order.
>
> Q: So do you understand, for example, the Court has dismissed allegations except for those that concern a February 23, 2005 conference call and a March 16th, 2005 10-K?
>
> Hakala: I believe that's correct. I don't know if there's a press release or some other representation on February 23rd, but I know that there are specific statements made during a conference call and then there's a filing of the 10-K where there's specific statements that are – I know for sure are in the case.
>
> * * *
>
> Q: Okay. And what [Exhibit B-1 is] denoting, as I understood your prior testimony, is that as of February 24, 2004, 26.44 percent of the trading price was ascribed to inflation because of false statements.
>
> Hakala: Inflation because of false statements or because they're not actionable at this point, what would have happened had the truth been revealed as I understand it at that point in time.
>
> Q: Okay. So --

| | |
|---|---|
| Hakala: | So what we're saying is that the inflation predates the class period, even if it's not actionable according to the Court. |
| Q: | We've had some things packed down. I understand what you're saying. Let's unpack them so the testimony is clear for the Court. |
| Hakala: | Okay. |
| Q: | This is February 24th, 2004, and you understand that's a year before the class period as certified by the Court; correct? |
| Hakala: | Yes. |
| Q: | You understand that February 24[, 2004] is a year before any actionable misrepresentation that the Court has recognized as surviving a motion to dismiss, correct? |
| Hakala: | Correct. |
| Q: | And what you were saying here is that the inflation was already baked into the stock a year before [the class period start] date? |
| Hakala: | Yes. |

* * *

| | |
|---|---|
| Hakala: | We obviously narrowed the class – this study period, because of the judge's decision to narrow the scope of the class. |

* * *

| | |
|---|---|
| Q: | And there is no entry on your event study summary for March 16th or March 17th, 2005; correct? |
| Hakala: | That is correct. |
| Q: | And do I take that to mean that on those days after the 3/16 10-K, you do not find a statistically significant event? |
| Hakala: | That probably is true, but it is more an issue of we felt that the representation in the filing of the 10-K at that time -- if I go back, I probably would have put it in here just to show it because it's in the complaint -- was more a repetition of what |

- 6 -

> had already been represented on February 23rd. So we viewed that event as more of a repetition of prior statements rather than revealing something new.
>
> Q:       Okay. What I hear you saying is that you might have included the summary of the event on the event study, but you didn't.
>
> Hakala:  I didn't. And sometimes I do, sometimes I don't.
>
> * * *
>
> Q:       Now, do you know whether or not there was a statistically significant price movement on March 16th, 2005?
>
> Hakala:  No, not without looking at it. There very well might have been.
>
> Q:       Okay. Take a look. And why don't you state for the record, just for the sake of efficiency, what you're consulting, sir.
>
> Hakala:  I'm consulting Exhibit C-1. And on Exhibit C-1, I'm looking at the price of MIVA. And I see that the price of MIVA went up on 3/16 and 3/17, but the -- I believe the subindex went down a little bit and up a little bit. But it appears that the change in price was relatively small and probably would not qualify as statistically significant.

(Hakala Dep. 14:20-15:11; 19:5-20:9; 21:3-6; 29:6-30:1; 33:22-34:12, Ex. A.)

14.      On November 3, 2008, Plaintiffs submitted the Expert Report of Hakala ("Hakala Report") on loss causation and damages, attached hereto as Exhibit B ("Ex. B"). Exhibit B-1 to the Hakala Report demonstrated the following:

| Regression Window | | 1-Day Effect | T-statistic | Description | Relevant Events | True Value Percent |
|---|---|---|---|---|---|---|
| 55 | 02/24/2004 | 3.59% | 1.34 | FindWhat.com to buy Comet Systems for $33.5M (Dow Jones News Service) | 0 | 73.56% |
| 56 | 03/22/2004 | 0.08% | 0.03 | FindWhat.com announced the signing of a strategic alliance with New York City-based Thomas Global Register, LLC, a leading publisher of global business-to-business internet directories, and a division of Thomas Publishing Company LLC. Under | 0 | 73.56% |

| | | | | the terms of the agreement, FindWhat.com and Thomas Global Register will establish a joint venture, ThomasB2B.com LLC, which will power a marketplace listings service using FindWhat.com's private label service(Business Wire) | | |
|---|---|---|---|---|---|---|
| | | | | * * * | | |
| 112 | 02/24/2005 | -18.32% | -7.68 | FindWhat.com said quarterly earnings were flat from a year ago, sending shares down. FindWhat posted 4Q net income of $4.8M or 15¢ a diluted share compared with $3.5M or 15¢ a diluted share a year earlier, despite several acquisitions and a near 40% increase in the number of shares outstanding since the year earlier period.  In November, the company forecast income of 14¢-17¢ a share.  Quarterly revenue rose to $58.7M compared to $21M, a year earlier. Adjusted EPS were 19¢ a share due to a non-cash goodwill impairment charge recorded in the 4Q on the company's acquisition of Miva Corp., FindWhat said. Operating expenses for the quarter rose to $51.6M from $15.6M, a year earlier, the company said.  Looking ahead, the company said it expects to earn 8¢-11¢ a share in the 1Q, and 53¢-69¢ a share in the full year 2005.  The company said it plans to increase internal investments in 2005 (Reuters News 02.23.05);   FindWhat.com Inc. shares were down after the company was slapped with a slew of brokerage downgrades following disappointing 1Q guidance.  The company sent Wall | 0 | 73.56% |
| 113 | 03/02/2005 | 0.67% | 0.25 | CBOE to list LEAPS on FindWhat.com (Dow Jones News Service 03.01.05) | 0 | 73.56% |

(Hakala Report, Ex. B-1 at 1, 8, Ex. B.)

15.     The Hakala Report states that, on February 24, 2005, MIVA's "stock dropped dramatically on the announcement of Q4 EPS missing consensus expectations, dropping 18.59% from the prior day's close."  (Hakala Report. ¶ 30, Ex. B.)

16.     On March 2, 2009, Defendants filed their Motion to Exclude the Expert Opinions of Hakala under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and

- 8 -

*Khumo Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  (Docket No. 153, Defendants' Motion to Exclude the Expert Opinions of Scott D. Hakala (filed Mar. 2, 2009).)

Respectfully submitted, this 2nd day of March, 2009.

        s/ Joseph G. Foster
Joseph G. Foster
Florida Bar No. 0301980

PORTER WRIGHT MORRIS &
 ARTHUR LLP
5801 Pelican Bay Blvd.
Suite 300
Naples, FL  34108-2709
Tel:  (239) 593-2900
Fax:  (239) 593-2990

    -and-

Todd R. David
Georgia Bar No. 206526
Susan E. Hurd
Georgia Bar No. 379628

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Tel:  (404) 881-7000
Fax:  (404) 881-7777

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| IN RE MIVA, INC.<br><br>SECURITIES LITIGATION | )<br>)  CIVIL ACTION FILE<br>)  NO. 2:05-cv-00201-FtM-29DNF<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

This 2nd day of March, 2009.

s/ Joseph G. Foster
Joseph G. Foster
Florida Bar No. 0301980

LEGAL02/31169438v2