UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

|  |  |
|---|---|
| IN RE MIVA, INC. ) <br> SECURITIES LITIGATION ) <br> ) | Civil Action File <br> No. 2:05-cv-00201-FtM-29DNF |

**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS'
DISPOSITIVE MOTION FOR SUMMARY JUDGMENT**

Lead Plaintiffs and certified class representatives Y.P. and Sampurna Jain ("Plaintiffs") respectfully submit this Opposition to Defendants' Dispositive Motion for Summary Judgment. As demonstrated below, Defendants have not shown that they are entitled to judgment as a matter of law under Federal Rule of Civil Procedure 56. Accordingly, the Court should reject their Motion.[1]

**INTRODUCTION**

On March 2, 2009, Defendants filed a Motion to Exclude the Expert Opinions of Scott D. Hakala ("Daubert Motion").[2] Docket No. 153. To accompany that motion, Defendants also filed their Dispositive Motion for Summary Judgment and Memorandum of Law in Support ("Summary Judgment Motion").[3] Docket No. 155. Defendants base their motion for summary judgment solely on issues of loss causation and damages. Def. S.J. Mem. 2.

---

[1] Pursuant to the Court's Case Management and Scheduling Order (Docket No. 105), Plaintiffs hereby state that there exists a genuine issue of material fact for trial regarding the existence and extent of loss causation and damages arising from Defendants' false and misleading statements on February 23, 2005 and March 16, 2005. Defendants' Statement of Undisputed Material Facts In Support of Defendants' Dispositive Motion for Summary Judgment (Docket No. 156) relate either to specific items in the procedural history of the action (¶¶1-12, 16) or are excerpts taken from Dr. Hakala's Report and deposition (¶¶13-15). While the excerpts from Dr. Hakala's deposition and Report are accurately reproduced, they are also completely divorced from their original context.

[2] This motion is cited herein as "Def. Daub. Mem. __."

[3] This motion is cited herein as "Def. S.J. Mem. __."

1

Although Defendants state that they are entitled to summary judgment even if Dr. Hakala's expert opinions are admissible (*id.* at 1), Defendants' Summary Judgment Motion is entirely dependent on their Daubert Motion. *Id.* at 13-14. Specifically, the arguments in Defendants' Summary Judgment Motion are nothing more than a replication of the arguments found in Section III(C) of their memorandum of law in support of their Daubert Motion. Accordingly, if the Court denies Defendants' Daubert Motion, then Defendants' Summary Judgment Motion should also be summarily denied.

Plaintiffs have demonstrated in their Opposition to Defendants' Daubert Motion[4] that Dr. Hakala is eminently qualified to provide his expert testimony regarding loss causation and damages. Indeed, the conflicting opinions and reports submitted by Dr. Hakala and Defendants' expert witness, Dr. Laura Simmons, indicates that at the very least a genuine issue of material fact exists regarding the existence and extent of damages and loss causation. For the reasons stated below and in Plaintiffs' Opposition to Defendants' Daubert Motion, the Court should reject Defendants' motion for summary judgment.

## ARGUMENT

### I.   THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. Under Rule 56, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial burden of proof of demonstrating an absence of a

---

[4] Plaintiffs' Opposition to Defendants' Daubert Motion is cited herein as "P. Daub. Opp. __."

2

genuine issue of material fact. *Id.* at 323. Only then does the burden shift to the nonmoving party to rebut this showing. *Baldwin County v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992). A fact is genuine "if the record as a whole could lead the trier of fact to find for the nonmoving party." *Pittman v. Tucker*, 213 Fed. Appx. 867, 870 (11th Cir. 2007). In reviewing a motion for summary judgment, the court must view all evidence and reasonable factual inferences drawn therefrom in the light most favorable to the party opposing the motion. *Id.*

## II.  THERE ARE GENUINE ISSUES OF MATERIAL FACT WITH REGARD TO LOSS CAUSATION AND DAMAGES

### A.  Defendants' Summary Judgment Arguments are Identical to Their *Daubert* Arguments

As previously discussed, the arguments in Defendants' Summary Judgment Motion are the same arguments that are contained in Section III(C) of their Daubert Motion. Defendants quote the same passages from Dr. Hakala's deposition testimony for the same misguided proposition that Dr. Hakala is attempting to advance theories the Court has already rejected. Def. Daub. Mem. at 6-8; Def. S.J. Mem. at 8-9. Defendants also reproduce the same excerpts from Exhibit B-1 of Dr. Hakala's Event Study for the same argument about Dr. Hakala's calculation of the true value percent. Def. Daub. Mem. at 8-9; Def. S.J. Mem. at 10-11. Defendants also arrive at the same incorrect conclusions regarding the content and context of Dr. Hakala's testimony. Def. Daub. Mem. at 9-10; Def. S.J. Mem. at 12-13.

Because Defendants make identical arguments in each of their motions, the Court should reject Defendants' arguments in their Summary Judgment Motion for the same reasons that Plaintiffs set forth in their Opposition to Defendants' Daubert Motion. Loss causation "describes 'the link between the defendant's misconduct and the plaintiff's economic loss.'" *Venezia Amos, LLC v. Favret*, 2008 U.S. Dist. LEXIS 10452, at *35 (N.D. Fla. 2008) (quoting *Robbins v. Koger*

*Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir. 1997)). To satisfy loss causation, "a plaintiff must show a causal connection between a decline in the price of a security, and the revelation of the truth that the defendant's misrepresentation or omission concealed. In other words, the plaintiff must have suffered a loss when the defendant's material misrepresentation became generally known." *In re Motorola Sec. Litig.*, 505 F. Supp. 2d 501, 536 (N.D. Ill. 2007) (internal citations omitted).

Dr. Hakala's Report shows the causal connection between the rapid decline in Miva's stock price and the corrective disclosures that took place in May 2005. Hakala Rep. at ¶30. As explained in Plaintiff's Opposition to Defendants' Daubert Motion, Dr. Hakala is able to make this causal connection because he properly considered confounding information. P. Daub. Opp. Sec. II(A); *see also* Hakala Dep. at 54:16 to 55:24; Hakala Rep. at ¶14.

Economic loss is measured not by the purchase of stock at inflated prices, but by the decline in the stock's value as a result of a company's false statements or omissions. *See In re Daou Sys.*, 411 F.3d 1006, 1027 (9th Cir. 2005) (citing *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1631-32 (2005)). Here, it is undisputed that Miva's stock price plummeted in May 2005. Dr. Hakala was able to separate the decline in Miva's stock price due to its false statements and omissions from the decline in the Company's stock price due to unrelated industry and market forces. P. Daub. Opp. Sec. II(B); *see also* Hakala Rep. at ¶33[5]; Hakala Dec. at ¶¶19-23.[6] Moreover, the multi-trader model Dr. Hakala used for calculating damages was tailored to the

---

[5] Dr. Hakala's Expert Report is attached as Exhibit C to Lead Plaintiffs' Motion *in limine* to Exclude the Testimony and Expert Report of Dr. Laura E. Simmons and Incorporated Memorandum of Law, Docket. No. 158. Dr. Hakala's Report is cited herein as "Hakala Rep. at __."

[6] On March 2, 2009, Plaintiffs filed the Declaration of Scott D. Hakala, Ph.D., CFA Regarding the Opinions of Dr. Laura E. Simmons to accompany their Motion *in limine*. *See* Docket No. 159. Dr. Hakala's Declaration is cited herein as "Hakala Dec. at __."

facts of the case and is well-accepted by the academic community and by the courts. *See* P. Daub. Opp. Sec. II(C).

### B. Dr. Hakala's Opinions and Testimony Establish Loss Causation and Damages

Defendants give five reasons that purportedly demonstrate the absence of loss causation and damages. Def. S.J. Mem. 8-13. Defendants' arguments rest on their fundamental misunderstanding of Dr. Hakala's expert report, and their deliberate refusal to consider his actual testimony.

Defendants first quote Dr. Hakala's deposition testimony at length for the proposition that he understood the only two actionable claims occurred on February 23, 2005 and March 16, 2005. Def. S.J. Mem. 8. Dr. Hakala clearly understands that statements made prior to February 23, 2005 are inactionable. Hakala Dep. 15:1-11. To suggest that Dr. Hakala knew that statements made prior to February 23, 2005 are inactionable, but that he nonetheless proceeded to flagrantly calculate damages based on inactionable statements, is an affront to common sense. This is especially so in light of Dr. Hakala's explicit explanation that he confined damages to claims related to February 23, 2005 and March 16, 2005. Hakala Dep. at 15:20-23.

Second, Defendants argue that because Dr. Hakala's event study found that inflation was present in Miva's stock price prior to the start of the Class Period, there can be no losses caused by Miva's false statements or omissions during the Class Period. Def. S.J. Mem. 8-10. To the contrary, although Miva's stock price fell on February 23, 2005, Defendants' false and misleading statements kept the price from falling to the value it should have traded at. That is, Defendants' false and misleading statements on February 23 caused Miva's stock price to be artificially inflated on this date—the first day of the class period. P. Daub. Opp. Sec. III(A),

*citing*, *e.g.*, Hakala S.J. Dec. at ¶3.[7] Indeed, Defendants' argument leads to absurd results. Under Defendants' theory, even if Miva were to freely and openly admit to making false statements and omissions, any Class Member who bought Miva's stock based on these false statements and omissions and who was damaged thereby when the stock price plummeted would not be allowed to recover damages. *See* P. Daub. Opp. Sec. III(B).

Third, Defendants claim that it is "abundantly clear" that Plaintiffs seek damages for statements the Court has ruled to be inactionable. Def. S.J. Mem. 10-11. In propounding this argument, Defendants deliberately and intentionally ignore both Dr. Hakala's Report and his deposition testimony. Dr. Hakala explicitly states that "only shares purchased during the Conforming Period [*i.e.*, the class period] and held until at least May 4, 2005 are entitled to damages." Hakala Rep. at ¶42. Moreover, Dr. Hakala makes this point unmistakably clear in his deposition testimony:

> Q. And is that estimate of damages confined to claims related to the February 23, 2005 statement and the March 16, 2005 statement?
>
> A. Yes.

Hakala Dep. at 15:20-23. Furthermore, Defendants do not, and cannot, point to any portion of Dr. Hakala's Report or deposition testimony where he states that events occurring prior to February 23, 2005 form the basis for his damages calculations.

Fourth, Defendants argue that Dr. Hakala's own opinions show that no statement issued on February 23 or March 16, 2005 had a positive effect on Miva's stock price. Def. S.J. Mem. 11-12. This argument is a result of Defendants' misunderstanding of Dr. Hakala's testimony. As explained above, although Miva's stock price fell on February 23, Defendants' false statements

---

[7] The Declaration of Scott D. Hakala, Ph.D., CFA Regarding Defendants' Dispositive Motion for Summary Judgment is attached hereto as Exhibit A and is cited herein as "Hakala S.J. Dec. at __."

6

and omissions prevented it from falling to the value at which it should have traded.  In other words, Defendants' false statements and omissions on February 23, 2005 caused Miva's stock price to be artificially inflated.  This simple fact can be seen in the chart identified as Exhibit C-1 to Dr. Hakala's Report.  *See also* P. Daub. Opp. Sec. III(A).

Furthermore, Defendants suggest that the information released on March 16, 2005 was not material because the Company's stock price did not move and Miva was trading in an efficient market.  This argument is completely inaccurate and illogical.  The information released on March 16, 2005 was materially false and misleading in that it supported what was already disclosed to the market previously, including on February 23, 2005, and thereby kept the Company's stock price artificially inflated.  Hakala Dep. at 30:3-11; *see also* P. Daub. Opp. Sec. II(D)(2).  Accordingly, this information was material not because it moved the stock price, but because it reinforced materially misleading information previously released, causing the stock price to remain inflated and preventing a stock price drop.

Finally, Defendants conclude that under Dr. Hakala's own analysis, no statement on February 23 or March 16, 2005 could have contributed to the inflation in Miva's stock price.  Def. S.J. Mem. 12-13.  For the reasons described above, this conclusion is simply inaccurate.  Dr. Hakala knew the Class Period began on February 23, 2005, and he explicitly limited his damages analysis to statements made during the Class Period.  Dr. Hakala considered confounding information and was able to separate the decline in Miva's stock price due to fraud from the decline in Miva's stock price due to unrelated market and industry factors.

For these reasons, Dr. Hakala's testimony and event study establishes loss causation and damages arising from Defendants' fraudulent scheme.  As a result, the Court should deny Defendants' motion.

## **CONCLUSION**

For the reasons explained above and in Plaintiffs' Opposition to Defendants Daubert Motion, Plaintiffs have shown that genuine issues of material fact exist with respect to loss causation and damages. Accordingly, Plaintiffs respectfully request that this Court enter an Order denying Defendants' Summary Judgment Motion in its entirety.

DATED: March 19, 2009                             Respectfully submitted,

                                                    **SAXENA WHITE P.A.**

By: */s/ Christopher S. Jones*
    Maya Saxena
    Florida Bar No. 0095494
    Joseph E. White III
    Florida Bar No. 0621064
    Christopher S. Jones
    Florida Bar No. 306230
    Lester Hooker
    Florida Bar No. 0032242
    2424 North Federal Highway
    Suite 257
    Boca Raton, FL 33431
    Tel.: (561) 394-3399
    Fax: (561) 394-3382

    **Lead Counsel for Lead Plaintiffs**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

|  |  |  |
|---|---|---|
| IN RE MIVA, INC. SECURITIES LITIGATION | ) ) ) ) | Civil Action File No. 2:05-cv-00201-FtM-29DNF |

**CERTIFICATE OF SERVICE**

I certify that on March 19, 2009, I electronically filed the foregoing Lead Plaintiffs' Opposition to Defendants' Dispositive Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

                                                                               */s/ Christopher S. Jones*
                                                                               Christopher S. Jones
                                                                               Florida Bar No. 306230