UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| IN RE MIVA, INC.<br><br>SECURITIES LITIGATION | )<br>)<br>)   CIVIL ACTION FILE<br>)   NO. 2:05-cv-00201-FtM-29DNF<br>) |

## DEFENDANTS' RESPONSE IN OPPOSITION TO LEAD PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE FRAZIER

Todd R. David
Georgia Bar No. 206526
Susan E. Hurd
Georgia Bar No. 379628

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309
Telephone:  (404) 881-7000
Fax:  (404) 881-7777

Joseph G. Foster
Florida Bar No. 0301980

PORTER WRIGHT MORRIS
& ARTHUR LLP
5801 Pelican Bay Blvd.
Suite 300
Naples, FL  34108-2709
Telephone:  (239) 593-2900
Fax:  (239) 593-2990

*Counsel for Defendants*

LEGAL02/31558882v2

I.  **INTRODUCTION**

Plaintiffs' case was destined for defeat at summary judgment because they blatantly ignored the District Court's prior rulings and tendered an expert report that was contrary to the District Court's rulings—as well as the law and logic. Accordingly, Magistrate Frazier rightly held that, even if Plaintiffs' damages theory passed the *Daubert* test for admissibility,[1] it would not create a genuine issue of material fact for trial, and, thus, summary judgment should be entered for Defendants. The Magistrate conducted a lengthy hearing on Defendants' Motion for Summary Judgment and properly considered several written submissions. In their Objections to the Magistrate's Report and Recommendation ("the Report"), Plaintiffs fail to identify any error in this well-reasoned opinion. Accordingly, Defendants respectfully request that the District Court adopt the Magistrate's Report and enter summary judgment in favor of the Defendants.

II.  **ARGUMENT AND ANALYSIS**

A.  **The Report Is Based On The Event Study And Related Testimony Of Plaintiffs' Own Expert.**

Plaintiffs ignore the primary reason the Magistrate concluded that summary judgment was appropriate here – *viz.*, that the sworn testimony of Plaintiffs' own expert, Scott D. Hakala ("Hakala"), was fatal to their case. (*See* Report at 12.) The Magistrate found dispositive Hakala's testimony that statements for which no claim is possible in this case caused the full extent of the price inflation that he testified existed. (*Id.* at 10-12.) The Magistrate correctly concluded that: (a) Defendants had satisfied their burden under Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), at summary judgment as to loss causation and damages; (b) the only evidence to which Plaintiffs adverted to satisfy their burden at summary judgment was Hakala's report and testimony; and (c) even if the

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

admissibility of Hakala's testimony were assumed, that testimony failed to create a genuine issue of material fact. (*See* Report at 4, 14.)

Plaintiffs do not and cannot identify any error in the Magistrate's analysis. Instead, Plaintiffs' Objections conjure a version of Hakala's testimony that is utterly unsupported by the record. As shown below, not only is Plaintiffs' version of Hakala's testiomony a fiction, but it would fail to help Plaintiffs' case even if it were based in fact.

It is important to review briefly the procedural history of the case and the timing and content of Hakala's work. By Order dated March 15, 2007, the District Court held that no statements issued prior to February 23, 2005 could serve as the basis for liability. *See In re MIVA, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, slip op. at 11-26 (M.D. Fla. Mar. 15, 2007) ("*MIVA I*"). The District Court again confirmed in ruling on Plaintiffs' Motion for Class Certification that Plaintiffs could have no claims for any statements made prior to February 23, 2005. *See In re MIVA, Inc. Sec. Litig.*, No. 2:05-cv-201-FtM-29DNF, slip op. at 4 (M.D. Fla. Mar. 12, 2008) ("*MIVA II*"); *see also* Pls.' Reply to Defs.' Opp. To Pls.' Mot. for Class Cert., Docket No. 134, at 1-2 (Sept. 24, 2007).

As reflected in the Report, Hakala performed his event study analysis in this case before the District Court ruled on the Defendants' Motion to Dismiss and ultimately rejected nine of the eleven alleged misstatements originally identified by Plaintiffs. (Report at 8.) Despite these clear directives from the District Court, Hakala opined that the full amount of the alleged price inflation in this case – 26.44% – was already present in the stock over one year prior to the first day of the class period (*i.e.*, February 23, 2005). (*Id.* at 10.) Hakala confirmed at his deposition that he believed pre-class period statements caused this precise amount of inflation, even though he acknowledged that the District Court had ruled no claims were possible with respect to any of

these statements. (*Id.* at 8.) There can be no doubt as to the substance of his testimony on these critical points; nor do Plaintiffs challenge the accuracy of any of Hakala's statements quoted in the Magistrate's Report.

Hakala's testimony was clear as to his understanding of the District Court's prior rulings on the scope of the possible claims in this case:

> Q: Do you have an understanding of what the Court's rulings have been regarding which issues or which alleged statements or public disclosures are or are not in the case?
>
> Hakala: I have a general understanding based on reading the Court's order.
>
> Q: So do you understand, for example, the Court has dismissed allegations except for those that concern a February 23, 2005 conference call and a March 16th, 2005 10-K?
>
> Hakala: I believe that's correct. I don't know if there's a press release or some other representation on February 23rd, but I know that there are specific statements made during a conference call and then there's a filing of the 10-K where there's specific statements that are – I know for sure are in the case.

(Hakala Dep. at 14:20-15:11.) Hakala also acknowledged his awareness that, as a result of the above ruling, the Court limited the class period to February 23, 2005 through May 4, 2005. (*See id.* at 21:3-6.)

Hakala further testified as follows regarding the origin of the alleged price inflation on which his damages and causation opinions are based:

> Q: Okay. And what [your event study is] denoting, as I understood your prior testimony, is that as of February 24, 2004, 26.44 percent of the trading price was ascribed to inflation because of false statements.
>
> Hakala: Inflation because of false statements or **because they're not actionable at this point**, what would have happened had the truth been revealed as I understand it at that point in time.
>
> Q: Okay. So --

- 3 -

| | |
|---|---|
| Hakala: | **So what we're saying is that the inflation predates the class period, even if it's not actionable according to the Court.** |
| Q: | We've had some things packed down. I understand what you're saying. Let's unpack them so the testimony is clear for the Court. |
| Hakala: | Okay. |
| Q: | This is February 24th, 2004, and you understand that's a year before the class period as certified by the Court; correct? |
| Hakala: | Yes. |
| Q: | You understand that February 24[, 2004] is a year before any actionable misrepresentation that the Court has recognized as surviving a motion to dismiss, correct? |
| Hakala: | Correct. |
| Q: | **And what you were saying here is that the inflation was already baked into the stock a year before [the class period start] date?** |
| Hakala: | **Yes.** |

(Hakala Dep. at 19:5-20:9 (emphasis added).)

In other words, as the above direct quotations make manifest, Plaintiffs are seeking to recover as damages alleged stock inflation that pre-dates the only statements the District Court previously held could proceed past the motion to dismiss stage.

The Report, thus, makes clear that the Magistrate's conclusion that summary judgment should be granted here was based on (a) Hakala's above-referenced testimony and (b) the District Court's prior rulings. (*Id.* at 8, 10-12.) In their recent submission, Plaintiffs choose as they must to ignore this testimony, which was quoted verbatim in the Report, and Plaintiffs continue to ignore the significance of the District Court's prior rulings. (*Id.* at 8; *see also id.* at 11.)

- 4 -

- 5 -

**B.      Plaintiffs Fail To Point To Any Errors Of Law In The Report.**

As noted above, the Magistrate's conclusions are not only squarely grounded in the sworn statements of Hakala, which are quoted at length in the Report, but also are in accord with the District Court's prior rulings on Defendants' Motion to Dismiss and Plaintiffs' Motion for Class Certification. *See, e.g.*, *MIVA I*, slip op. at 11-26; *MIVA II*, slip op. at 4.  The Magistrate clearly followed the District Court's prior rulings, and Plaintiffs' objections represent yet another attempt by them to circumvent these rulings.

On Defendants' Motion to Dismiss, the District Court examined eleven alleged misstatements from September 2003 to March 2005 and correctly determined that nine of these statements on their face failed to satisfy one or more of the mandatory elements of a securities fraud claim. *MIVA I*, slip op. at 11-26.  The District Court held, for example, that Plaintiffs failed to demonstrate that certain statements were made with a strong inference of scienter, that other statements were not actually false or misleading in any respect, and that certain other statements were forward-looking, accompanied by meaningful cautionary language, and, therefore, protected by the Reform Act's safe harbor provisions. *Id.*  Similarly, in ruling that the class period in this case could not begin any earlier than February 23, 2005, the District Court again properly rejected any notion that these earlier statements and any supposed price inflation caused by these statements could have any possible relevance to this case. *MIVA II*, slip op. at 4.

Indeed, Plaintiffs explicitly argued in their Motion for Class Certification that there should be an earlier class period start date based on the theory that statements made prior to February 23, 2005 could have had an inflationary effect on the stock price during the class period. (*See* Pls.' Reply to Defs.' Opp. To Pls.' Mot. for Class Cert., Docket No. 134, at 1-2 (Sept. 24, 2007).)  The District Court expressly rejected this argument.  In fact, the District

Court's *MIVA II* opinion bluntly reminded Plaintiffs that the District Court "ha[d] already ruled that all statements prior to the February 23, 2005 conference call were not actionable and thus no basis for liability exists for any statements made prior to February 2005." *See MIVA II,* slip op. at 4.

The necessary outcome of these prior orders by the District Court is that these pre-February 23 statements cannot be part of the class at issue nor can any inflation that arguably arose as a result of these statements contribute in any respect to the damages claims that may remain for that class period. Hakala, however, freely admits that his entire event study is premised on the notion that these earlier statements were the original source of the alleged inflation, which he contends carried over into the class period and was unchanged in any respect by the only alleged misstatements that still exist. (Report at 8-9.) The Magistrate correctly determined that allowing Plaintiffs to proceed any further with such a theory would be expressly contrary to the prior rulings of the District Court. (*Id.*) The Report's conclusions are, thus, entirely consistent with controlling authority, and no error of law occurred here.

C. **Plaintiffs' "Backwards" Approach Cannot Alter The Outcome Here.**

Faced with Hakala's testimony that is untenable, Plaintiffs have attempted to revise his opinion. But (a) the record does not support Plaintiffs' re-write of their own expert's testimony and (b) even if Plaintiffs' version were supported by Hakala's actual testimony, it would not help their case.

For the first time, Plaintiffs assert in their Objections that Hakala "began" his analysis with the alleged corrective disclosures that occurred near the end of the class period (*i.e.*, on May 5, 6, and 9, 2005) and worked his way backwards to determine the amount of inflation in the Company's stock price. (Pls.' Objs. at 4-5.) This attempt by Plaintiffs to re-write their expert's

testimony at this late date should be rejected. *See Williams v. McNeil*, 557 F.3d 1287, 1291-92 (11th Cir. 2009) (holding that a district court has broad discretion to decline to consider arguments raised for the first time in objections to a magistrate's report and recommendation); *see also Jackson v. Select Portfolio Servicing, Inc.*, No. 08-0628-WS-M, 2009 WL 2385084, at *2 (S.D. Ala. July 31, 2009) (refusing to consider arguments on portions of affidavit not challenged before magistrate). But even if this notion were to be considered, this "backwards" approach does not alleviate the fundamental problems with Plaintiffs' claims. Hakala specifically testified that he considered pre-class period statements and, worse still, that they were the source of the full amount of the inflation on which Plaintiffs' claims are based. (Report at 8-9.)

As noted above, Hakala performed his event study analysis before the District Court ruled on Defendants' Motion to Dismiss and prior to certification of any class. (*Id.* at 8.) As a result, he attempted to calculate inflation and damages with respect to a much longer class period that encompassed nine other alleged misstatements, the earliest of which were made in 2003. (*Id.*; *see also* Defs.' Mot. for Summ. J. at 8-10.) His undisputed testimony is that, regardless of whether the District Court agrees with him, the inflation first arose over a year prior to the start of the class period. (Report at 8-9.)

It is, thus, disingenuous to suggest as Plaintiffs do that in working backwards from the end of the class period, the District Court should come to rest on February 23, 2005, particularly where Hakala has testified (and his event study shows) that the purported inflation continues to exist unchanged as one moves further back in time. Plaintiffs ask the District Court to ignore the fact that Hakala's analysis extends well beyond the date of the first alleged misstatement (February 23, 2005) and reflects price inflation that first arose over a year prior to that date. (*Id.*)

The Magistrate correctly determined that, under these facts, Plaintiffs could not possibly prevail because Hakala's analysis provides no basis for a jury to conclude the specific amount of the inflation supposedly attributable to the two remaining alleged misstatements as opposed to the earlier non-actionable statements that factored so prominently in his study. (*Id.* at 10-12.) In other words, Hakala's opinions provide no empirical basis from which to distinguish damages supposedly caused by statements that are not actionable under the District Court's prior rulings from damages that could possibly be attributed to statements that the District Court held survived dismissal.

Moreover, any argument that one should ignore the date on which inflation *from the purported misstatements that remain in the case* supposedly entered the stock price and look only at the stock price drop at the very end of the class period is, as the Magistrate correctly found, inconsistent with *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). In *Dura*, the Supreme Court made clear that there must be a causal connection between the loss suffered and the alleged misstatements *in the case* sufficient to link those losses to the alleged misstatements. 544 U.S. at 342; *see also* 15 U.S.C. § 78u-4(b)(4). To meet that burden, "a plaintiff must show that the [alleged] untruth was in some reasonably direct, or proximate, way responsible for his loss." *Robbins v. Kroger Props.*, 116 F.3d 1441, 1447 (11th Cir. 1997) (quotations omitted). Further, "a plaintiff will be allowed to recover only [those] damages actually caused by the misrepresentation." *Id.* at 1447 n.5.

The mere fact that the stock price declined after shares were purchased is insufficient standing alone because that decline could be due to a variety of factors unrelated to the alleged fraud. *Dura*, 544 U.S. at 343. Accordingly, *Dura* mandates that a plaintiff must prove that the alleged fraud actually caused, and is directly linked to, the stock price drop on which the

plaintiff's purported damages are based. *Id.* at 345-46. Thus, in order to recover here, Plaintiffs were required to prove that there was a direct causal connection between each of the alleged misrepresentations described in the Complaint and the subsequent decline in MIVA's stock price. *Id.*; *see also Robbins*, 116 F.3d at 1447; *Hoffman v. Authentec, Inc.*, No. 6:08-cv-1741-Orl-28DAB, 2009 WL 3109860, at *18-*19 (M.D. Fla. Sept. 24, 2009) (dismissing claims for failure to plead loss causation where plaintiff "d[id] not allege a sufficient causal connection between [the] misleading statement and the decline in share price"); *In re Coca-Cola Enters., Inc. Sec. Litig.*, No. 1:06-CV-0275-TWT, 2007 WL 2904160, at *3 (N.D. Ga. Oct. 3, 2007) (holding plaintiffs' loss causation allegations "inadequate" where plaintiffs "have not set forth a sufficient nexus between" the allegedly misleading statements and the loss). Applying *Dura*, the Magistrate correctly observed that the loss at issue must be linked to the two remaining alleged misstatements and, where other statements are – according to Plaintiffs' own expert – the cause of the inflation that existed during the class period, the requisite connection cannot be established as a matter of law. (Report at 10-12.)

Plaintiffs' argument that all of the loss "must be" attributable to the two alleged misstatements would be inadequate under *Dura*– even in a case where pre-class period inflation was not an issue – but is obviously insufficient here where Hakala has testified unequivocally that the total amount of the alleged inflation already existed in the stock price before these statements were even issued. (*See* Pls.' Objs. at 8.) Because, according to Hakala, the inflation was the same both before and during the class period, his testimony cannot create a triable issue of fact as to the only two statements that the District Court held could proceed past the motion to dismiss. Thus, the Magistrate correctly concluded that Plaintiffs had failed at summary judgment to point to evidence that could create a legitimate issue for trial. (Report at 12, 14.)

*See Celotex*, 477 U.S. at 322-23; *see also Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1243 (11th Cir. 2001). Not surprisingly, none of the cases cited by Plaintiffs deal with the situation presently before the District Court – *i.e.,* purported price inflation that already existed in the exact same amount the day before the start of the class period and continued throughout the class period unchanged.[2]

For all these reasons, starting at the end of the class period and working backwards cannot cure the fundamental causation defects inherent in Plaintiffs' claims. Hakala's own event study inexorably leads one back to non-actionable, pre-class period statements that, according to him, are responsible for the entire amount of the alleged inflation in the stock price. The Magistrate, therefore, correctly concluded that Plaintiffs cannot satisfy their burden of proving loss causation under *Dura* with respect to the remaining class period statements. (Report at 12.)

### D. Plaintiffs' Arguments Regarding The Validity Of Hakala's Methodology Are Beside The Point.

Although they ignore the primary basis for the Magistrate's Report, Plaintiffs attack with vigor (and flawed reasoning) two alternative points noted by the Magistrate. (Pls.' Objs. at 3-4.) Plaintiffs suggest that the Report somehow failed to give proper weight to Hakala's opinions or engaged in an inappropriate "evaluation" of his opinions. (*Id.*) These criticisms are unfounded. Not only did the Magistrate *accept* Hakala's opinions for purposes of deciding Defendants' Motion, but it was also Hakala's opinions that formed the basis for the Magistrate's conclusion that loss causation and recoverable damages could not be shown here. (Report at 4, n.3; *see also id.* at 10-12.)

---

[2] Plaintiffs' cited cases address the timing or source of the purported class period corrective disclosures and have nothing to do with inflation that arose prior to the start of the class period. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 31-32 (2d Cir. 2009); *Alaska Elec. Pension Fund v. Pharmacia Corp.* 554 F.3d 342, 346 (3d Cir. 2009); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 225-27 (5th Cir. 2009).

Defendants did argue in the alternative that Hakala's methodology was flawed and that his report and testimony should be excluded, but the Magistrate did not reach these issues because he found that, even if Hakala's opinions were admitted, they supported entry of summary judgment in favor of the Defendants. (*See* Report at 4, n.3, *see also id.* at 10-14.) The Magistrate's Report, therefore, assumed that Hakala's event study methodology was a valid approach to attempting to prove loss causation and damages in a securities case, but nevertheless concluded that these opinions could at best support only claims that had been rejected earlier. (*Id.*)

Accordingly, Plaintiffs' lengthy arguments regarding the general acceptance and validity of Hakala's opinion, citations to his qualifications, and references to his scholarship are, therefore, irrelevant to the issues presently before the District Court. (*See* Pls.' Objs. at 3-6.) There was no legal error here regarding the Magistrate's willingness to consider these opinions and testimony because, as demonstrated above, the Report's conclusions are squarely grounded in these opinions and testimony. (Report at 4, n.3; *see also id.* at 10-14.)[3]

### E. The Report's Commentary Regarding Market Reaction Or Lack Thereof To The Two Remaining Alleged Misstatements Was Not In Error.

Plaintiffs' Objections focus unduly on other comments made in the Magistrate's Report regarding the lack of a statistically significant, positive stock price movement in the wake of the two remaining alleged misstatements on February 23 and March 16, 2005. (*See* Pls.' Objs. at 6-10; Report at 13-14.) As an initial matter, the absence of any positive stock price reaction is a public record fact that Plaintiffs do not challenge, and, therefore, cannot serve as a point of attack regarding the Report. *See* 28 U.S.C. § 636(b)(1). Further, the Magistrate did not determine that

---

[3]   In accepting Hakala's opinions and testimony "for the purposes of summary judgment only," the Magistrate set aside the issue of their admissibility under *Daubert* to be addressed at a later date in the event Defendants' Motion for Summary Judgment was not granted. (Report at 4, n.3.)

summary judgment should be granted on that basis alone. The Magistrate focused instead on the fact that the full amount of the alleged price inflation already existed prior to the issuance of either of these statements. (*See* Report at 10-12, 14.) He did, however, note his additional concerns regarding the failure of the Company's stock price to react in a manner consistent with Plaintiffs' allegations. (*Id.* at 13-14.)

Plaintiffs also misunderstand the case law concerning stock price reactions to allegedly false and misleading statements. All the cases Plaintiffs cite for the proposition that the significant negative stock price reaction on February 24, 2005 should be ignored are inapposite. (*See* Pls.' Objs. at 6-7.) None of these cases addresses the situation presently before the District Court, *i.e.*, where the stock price moved downward in a statistically significant amount immediately following an allegedly positive misstatement. Instead, in each of these cases, the stock price remained the same in the wake of the allegedly misleading statement.[4] Plaintiffs, thus, have cited to no cases where courts have sustained claims of supposedly inflationary statements where it was undisputed that the statements at issue were followed by any statistically significant negative price reaction. *Cf. In re Metris Cos., Inc. Sec. Litig.*, 428 F. Supp. 2d 1004, 1014 (D. Minn. 2006) (rejecting Hakala's theory of loss causation where the company's stock price dropped following each of the allegedly misleading statements).

Similarly, Plaintiffs are wrong when they criticize the Magistrate for noting in his Report that Hakala viewed the March 16, 2005 disclosures as immaterial. (*See* Pls.' Objs. at 9-10.) Hakala clearly testified that he failed to include the March 16 date in his event study because in his opinion nothing new happened on that date. (Hakala Dep. at 29:6-30:1, Ex. A.) According

---

[4] *See In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 586, 600 (S.D.N.Y. 2009); *In re Scientific Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1340-41 (N.D. Ga. 2007); *In re Bristol Myers Squibb Sec. Litig.*, No. Civ. A. 00-1990(SRC), 2005 Wl 2007004, at *17 (D.N.J. Aug. 17, 2005); *Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223, 240 (D. Mass. 2004); *McEwen v. Digitran Sys., Inc.*, 160 F.R.D. 631, 640 (D. Utah 1994).

to Hakala, any disclosures made by the Company on that date merely repeated information that was already available to the market. (*Id.*) In order for a misstatement or omission to be material, it must have the effect of altering the total mix of information available to investors. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). Hakala's testimony is, thus, entirely consistent with the Magistrate's observation that Plaintiffs have not pointed to any information released on March 16 that had the ability to move the stock price in a meaningful way. (*See* Report at 14.)

### III.  CONCLUSION

For the reasons stated above, the District Court should accept the Report and Recommendation of Magistrate Judge Frazier and grant Defendants' Motion for Summary Judgment.

Respectfully submitted, this 5th day of October, 2009.

    _s/ Joseph G. Foster_____
Joseph G. Foster
Florida Bar No. 0301980

PORTER WRIGHT MORRIS & ARTHUR LLP
5801 Pelican Bay Blvd.
Suite 300
Naples, FL  34108-2709
Tel:  (239) 593-2900
Fax:  (239) 593-2990

-and-

Todd R. David
Georgia Bar No. 206526
Susan E. Hurd
Georgia Bar No. 379628

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
Tel:  (404) 881-7000
Fax:  (404) 881-7777

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

| | |
|---|---|
| IN RE MIVA, INC.<br><br>SECURITIES LITIGATION | )<br>)   CIVIL ACTION FILE<br>)   NO. 2:05-cv-00201-FtM-29DNF<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing **DEFENDANTS' RESPONSE IN OPPOSITION TO LEAD PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE FRAZIER** with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

This 5th day of October, 2009.

      _s/ Joseph G. Foster_____
      Joseph G. Foster
      Florida Bar No. 03019